OSCAR PETERSON, APPELLANT, v. CITIZENS BANK OF STUART, APPELLEE.

FILED JULY 2, 1928. No. 26061.

*D. L. Jouvenat* and *William M. Ely,* for appellant.

*J. J. Harrington, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and HOWELL, JJ., and BEGLEY and REDICK, District Judges.

GOSS, C. J.

This is an action to recover damages for the alleged conversion of chattel mortgaged property. A jury was waived

and the case was tried to the court. The court found for defendant. Plaintiff appealed from a judgment dismissing the case.

The case was tried on stipulated facts preserved in the bill of exceptions. The errors assigned and argued relate to the insufficiency of evidence to sustain the findings and judgment, and that it is contrary to law.

The controversy is over certain calves and arises out of chattel mortgages given to the respective parties by George Hytrek. The appellee's mortgage was prior in time. It was made March 23, 1925, and filed the same day. Without going into fuller details here because of later stipulated facts which will be referred to in their order, we derive from the stipulation that the mortgage covered 147 or more head of cattle, 78 of which were cows, 10 were two year old heifers, and 23 were heifers one year old. The mortgage contained this statement: "It is also intended that this mortgage shall include all the increase from the above cows and heifers."

The appellant's mortgage was made and filed July 1, 1925. It covered 55 calves born in the spring of 1925. The mortgage contained this statement: "This mortgage is given to cover the calves * * * that I own at this time."

On September 22, 1925, appellee took possession of 48 of the 55 calves and sold them. Both parties claimed a first lien on the 48. They stipulated that the 48 calves were worth $1,000 and that appellee has never paid that sum or any part of it to appellant; that the 55 calves covered by appellant's mortgage were all born to cows included in appellee's mortgage but none had been born except four or five that were two or three weeks old when that mortgage was given on March 23, 1925; that nine and a half months is the natural period of gestation; that the remainder of the 55 calves were conceived prior to the mortgage but were born between its date and August 1, 1925; that the 48 calves that were sold by appellee were continuously suckled by their mothers, ran with their mothers and were sold with them at public auction; that at the time of

the trial there was still due the plaintiff (appellant) on the debt secured by its mortgage $1,649.93, and there was still due defendant (appellee) on the debt secured by its mortgage "more than $1,600;" and "that the sole question in this case is, who has the prior lien, the plaintiff or defendant, on said calves and increase."

Appellant argues in his brief that his chattel mortgage was definite in its description and covered 55 calves then born and existing; while the mortgage of appellee was indefinite and is sought to be extended over five of the calves already born at the time of the execution of appellee's mortgage and therefore required to be definitely described; and is sought to be extended over the rest of the 48 involved, not in actual existence when the mortgage was executed and indefinitely described as "increase." This contention requires a legal definition of "increase" as applied to such a case.

Webster, New International, describes "increase" as "Multiplication by production of young;" Standard—"Increment by generation; progeny."

It was held in *Cole v. Kerr*, 19 Neb. 555, that the lien of a chattel mortgage on a crop of corn not planted will not attach to the crop even when it comes into existence unless possession is taken by the mortgagee. The reason for the rule is that the thing mortgaged has no existence. In *Battle Creek Valley Bank v. First Nat. Bank*, 62 Neb. 825, in an opinion by Sullivan, J., it was held that things which have no actual nor potential existence are not the subject of chattel mortgage; and that, within the meaning of this rule, animals which have neither been littered nor conceived are without actual or potential being. In the body of the opinion the court expressly stated that it did not decide whether a mortgage given during the period of gestation covered the increase. The mortgage in that suit covered the increase but it was given prior to the period of conception. So it appears, in the absence of any of our cases cited by the parties or found by us, that the precise

question involved is one of first impression in this jurisdiction.

The following cases serve to illuminate the question: *Holt v. Lucas,* 77 Kan. 710, holding that a chattel mortgage on domestic animals expressly covering the increase, executed during gestation, creates a lien upon the increase; *Rogers & Dewey v. Highland,* 69 Ia. 504, sucking colts of mares mortgaged before the colts are foaled are covered by the mortgage until they are weaned; *Funk v. Paul,* 64 Wis. 35, where domestic animals are mortgaged during the period of gestation the offspring when born will, as between the parties, be covered thereby; but as against a *bona fide* purchaser or incumbrancer, acquiring his title or lien without notice after the period of nurture has passed, such offspring will not be covered by the mortgage; *Darling v. Wilson,* 60 N. H. 59, the effect of a mortgage upon a mare with foal born later is to create a lien upon the foal when born but the lien does not continue beyond the period requisite for the suitable nurture of such increase; *Edmonston v. Wilson,* 49 Mo. App. 491, when the owner of a mare gave a mortgage on her and described her therein as with foal the mortgagee will, as against the mortgagor, be entitled to the colt when born; *Libert v. Unfried,* 47 Wash. 186, a mortgage, upon 1,200 head of ewe sheep and their increase and upon 300 head of wether sheep, results in a construction of the words "and their increase" as applying "merely to the increase of lambs from ewes" and not to include the clip of wool from the sheep.

It seems to us, upon consideration of the facts stipulated by the parties, of the general principles affecting them, and of the precedents in other courts, that the true rule to apply here is this: A chattel mortgage, describing cows and their increase, made during the period of gestation, creates a lien upon the calves resulting from such gestation and continues such lien while the calves are being nurtured by their mothers during a reasonable period.

This disposes of questions raised as to such of the calves

as were born after the mortgage to appellee was executed, by determining that they were increase and were covered by the lien of the mortgage. This accounts for 43 out of the 48 calves disposed of with their mothers by the appellee. But there were five calves concededly born prior to the date of the mortgage to appellee and running with their mothers at that time. Appellee contends that they were described in its mortgage and are included under the definition of "increase." They were definitely described and included in the 55 calves covered by the mortgage given to appellant. We are not disposed to decide the five calves came properly within any definition of "increase" as understood through our study and discussion of that term. These five calves had a definite existence of their own at the time the mortgage to appellee was made. We direct attention to a further description of the cattle in that mortgage not abstracted from the description in the stipulation on the first page of this opinion: "One hundred and forty-seven head of mixed cattle or more, it being my intention to include in this mortgage all of my cattle, branded and unbranded; seventy-eight head of cows," etc. Webster defines cattle: "Collectively, live animals held as property but raised for some use, now usually confined to quadrupeds of the bovine family, but sometimes including all domestic quadrupeds, as sheep, goats, horses, mules, asses and swine." Without going into detail, we refer to Words & Phrases, where there appears nothing in the definitions taken from legal cases that would limit the use of the word "cattle" to bovines of any particular age. It is a collective noun and when the mortgagor described all his cattle it was sufficient to bind the parties to the mortgage and to impart notice to all those having notice of the mortgage that the calves then running with their mothers were included in the mortgage.

For the reasons stated we are of opinion that the judgment of the district court was right and it is

AFFIRMED.