Williams, J.
 

 This cause presents a question of the priority of two separate liens upon the offspring of five cows. The defendant W. W. Patrick, owner of the cows, mortgaged them and “all increase” to the plaintiff, Cambridge Production Credit Association. The mortgage was promptly and duly filed with the county recorder as provided by statute. At the time the mortgage was given twTo of the cows had conceived offspring, three had not. Shortly thereafter the other three cows conceived and in due time all the calves, so conceived, were born to the five cows.
 

 When the two calves, first conceived, were yearlings and the other three were spring calves, all five were mortgaged to the defendant The Tuscarawas Valley Finance Company. At the time the subsequent mort-. gage was executed and delivered, the defendant company had actual knowledge of the existence of plaintiff’s mortgage which was then on file. The yearlings and calves remained in the hands of the mortgagor and never came into possession of the plaintiff at any time.
 

 Specifically, then, the question is whether the defendant mortgagee has the first and best lien as adjudged by the Court of Appeals.
 

 
 *526
 
 It is a general rule that property cannot be mortgaged unless it has either an actual or a potential existence and, as a corollary thereto, a mortgage of after-accrued property is valid in law only as an ex-ecutory contract for a mortgage. By application of these principles a mortgage which is given upon increase alone before such increase is conceived does not create a lien but only a contract for a lien, for obviously when the increase is so mortgaged, it must be
 
 in útero
 
 or no lien attaches then or upon birth. Where, however, in the same instrument both the dam and her increase are mortgaged then the application of the rule is not exactly the same. The distinction which is based upon the well-known rule that the newborn increase belongs to the owner of the dam, requires an extended explanation which we will undertake.
 

 In considering this phase of the inquiry it must be kept in mind that the rule adopted in a particular jurisdiction depends for the most part upon whether a chattel mortgage merely creates a lien or passes legal title to the mortgagee.
 
 Brown, Admr.,
 
 v.
 
 Schwab,
 
 27 Ariz., 457, 233 P., 593, 39 A. L. R., 150, and annotation.
 

 Under a mortgage of both dam and increase, the rights of the parties to the instrument of mortgage depend, according to the current of authority, upon whether the lien theory of mortgages prevails in the particular jurisdiction. In many states in which that theory does prevail it is held that even where the dam and increase are mortgaged together, but the increase has not been conceived at the time the mortgage is given, no lien is created upon the increase. The rationale of these decisions is that, the legal title to the dam being in the mortgagor, legal title to any increase is likewise in the mortgagor and the increase not being in actual or potential existence at the time the mort
 
 *527
 
 gage is executed and delivered, no lien ever arises thereon in favor of the mortgagee. Though the mortgage amounts in law to a contract for a morcgage as to the increase, it can only ripen into an actual lien through mortgagee’s taking possession of the increase after birth.
 

 On the other hand in those states in which the common-law rule as to chattel mortgages prevails and the title to the chattels passes to the mortgagee, subject to the defeasance clause, it is held by the great weight of authority that the mortgage lien attaches to the newborn progeny even though the increase is not mentioned in the mortgage and regardless of the time at which the increase was conceived. The rationale of the decisions so holding is that title to the mortgaged dam passes to the mortgagee and therefore the holder of the legal title to the dam becomes the holder of the legal title to the increase. For cases see annotations in 39 A. L. R., 153.
 

 In Ohio the common-law rule prevails and the uniform holdings are that the mortgagee of chattels becomes the general owner of them and as such holds the legal title subject to the defeasance clause.
 
 Robinson
 
 v.
 
 Fitch,
 
 26 Ohio St., 659;
 
 Metropolitan Securities Co.
 
 v.
 
 Orlow,
 
 107 Ohio St., 583, 140 N. E., 306, 32 A. L. R., 992. So as general owner of the dams the plaintiff became the general owner of their newborn increase. It follows that the first mortgage created a valid and subsisting lien upon the two yearlings and the three spring calves.
 

 The next inquiry which arises is as to how long such a mortgage lien would continue and whether it would survive the period of suitable nurture. The only sound conclusion is that as between the mortgagor and mortgagee the lien upon the increase, arising as it did out of the contractual relations of the parties, would continue indefinitely and be considered as of
 
 *528
 
 the same efficacy and duration as the lien upon the dam itself. The change of the offspring in its growth through the suckling period and into maturity could not change the contractual rights and obligations which grew out of the mortgage.
 
 Funk
 
 v.
 
 Paul,
 
 64 Wis., 35, 54 Am. Rep., 576.
 

 Counsel for the subsequent mortgagee make the broad contention that a mortgage lien upon increase continues even as between the parties thereto only during a reasonable period for the nurture of the calves by their mothers and therefore the lien had ceased before the subsequent mortgage was gh en. In support of this contention counsel cite the following-cases:
 
 Peterson
 
 v.
 
 Citizens Bank of Stuart,
 
 117 Neb., 327, 220 N. W., 575;
 
 Leisy v. Kane,
 
 128 Neb., 594, 259 N. W., 526;
 
 Rogers & Dewey
 
 v.
 
 Highland,
 
 69 Iowa, 504, 29 N. W., 429;
 
 Darling
 
 v.
 
 Wilson,
 
 60 N. H., 59;
 
 Edmonston v. Wilson,
 
 49 Mo. App., 491;
 
 Funk
 
 v.
 
 Paul, supra.
 
 It does not appear in any of the first five of the cases so cited that there was involved a subsequent mortgagee who had actual notice of the previous mortgage on dam and increase. Those cases are therefore distinguishable from the case at bar' as will be shown. The other case so cited,
 
 Funk
 
 v.
 
 Paul,
 
 so plainly supports plaintiff’s position that we quote at length from it:
 

 “The case of
 
 Winter
 
 v.
 
 Landphere
 
 [42 Iowa, 471]
 
 supra,
 
 is cited approvingly in
 
 Darling
 
 v.
 
 Wilson,
 
 60 N. H., 59; S. C., 49 Am. Rep., 305. But the court in this last case goes further and declares that ‘there being nothing in the mortgage showing an intention to create a lien upon the increase of stock mortgaged, the lien existing only as an incident to the mortgage, •would,
 
 as between the parties,
 
 continue
 
 so long only
 
 as is necessary for the suitable nurture of the increase. This view is supported upon sound princi
 
 *529
 
 pies.’ To our minds this view cannot be sustained upon sound principles. The lien was created by the mortgage, and, so far as the mortgagor is concerned, was entirely independent of the nurture. The mortgage was a valid lien upon the increase, as against the mortgagor in possession, and he necessarily knew, when the mortgage was given, the young dropped, and the period of gestation, and hence there would seem to be no valid reason for terminating the lien, as against the mortgagor, merely because the period of ‘suitable nurture’ had passed.
 
 Such nurture did not give the lien, and its termination could, not take it away as against the mortgagor.
 
 [Italics ours.] As to such mortgagor the question of notice or insufficiency of description is not involved, for he had actual notice that such increase was, in fact, covered by the mortgage.
 
 But as to subsequent bona fide purchasers and'mortgagees without notice the question is different. As to them, the. period of nurture being passed, and the young being entirely separated from the mother, and not being mentioned in the mortgage, nor any longer connected with the mother covered by the mortgage, they have neither actual nor constructive notice of the mortgagor’s rights and interest, nor any thing to put them upon inquiry.
 
 [Italics ours.]
 

 “In the case before us the period of nurture had passed, and the calves were kept by the mortgagor in •a field separated from the cows, so that a
 
 bona fide
 
 purchaser or mortgagee without notice would have been protected. Was the plaintiff such mortgagee?
 
 He took the mortgage to secure an indebtedness in■curred many months before and not yet due, and with■out any new consideration. The mortgage, though re■quested, was purely voluntary, and gave the mortgagee no greater right or
 
 [italics ours] interest in
 
 the
 
 calves than the mortgagor possessed. * * * To constitute .-a
 
 bona fide
 
 purchaser or mortgagee, there must not
 
 *530
 
 only be an absence of notice, but also a payment of, or fixed liability for, the consideration.”
 

 That decision is important upon two elements fatal to the subsequent mortgagee’s claimed right of priority: (a) The absence of any consideration except a pre-existing indebtedness and (b) notice of a prior mortgage.
 

 In the absence of statute, a mortgage given to secure a pre-existing debt without other consideration does not take priority over a prior lien of which the. subsequent mortgagee had no notice.
 
 Lewis
 
 v.
 
 Anderson,
 
 20 Ohio St., 281. In the latter case the conflicting liens were upon real estate but the rule applies with equal force to personalty and is sustained by the great weight of authority.
 
 Louthain
 
 v.
 
 Miller,
 
 85 Ind., 161;
 
 People’s Savings Bank
 
 v.
 
 Bates,
 
 120 U. S., 556, 7 S. Ct., 679, 30 L. Ed., 754;
 
 Knowles Loom Works
 
 v.
 
 Vacher,
 
 57 N. J. L., 490, 31 A., 306, 33 L. R. A., 305;
 
 Collerd
 
 v.
 
 Tully,
 
 78 N. J. Eq., 557, 80 A., 491, Ann. Cas. 1912C, 78;
 
 Horton
 
 v.
 
 Wright, Barrett & Stillwell Co.,
 
 36 N. D., 622, 162 N. W., 939;
 
 Hicks
 
 v.
 
 National Surety Co.,
 
 50 Wash., 16, 96 P., 515, 126 Am. St. Rep., 883;
 
 Empire State Trust Co.
 
 v.
 
 Trustees of Fisher & Co.,
 
 67 N. J. Eq., 602, 60 A., 940, 3 Ann. Cas. 393;
 
 Hughes
 
 v.
 
 Wessell,
 
 226 Iowa, 811, 285 N. W., 200. See comment note, 124 A. L. R., 1259; 7 Ohio Jurisprudence, 359, Section 69.
 

 The record in the case at bar shows .that the defendant Patrick “went security” for the purchase price of a motor vehicle bought by one Foley, his son-in-law, who failed to meet his payments and that the mortgage on the yearlings and calves was given by Patrick to cover the unpaid part of the indebtedness previously contracted bv Foley. But it does not appear from the record herein whether there was any extension of time when such mortgage was executed
 
 *531
 
 and delivered. As such an extension, if it were given, would be sufficient to make the defendant company a mortgagee in good faith, we are not regarding the fact, that the subsequent mortgage was given to satisfy or secure a pre-existing indebtedness, as conclusive. Yet as we proceed it will become clear that such pre-existing indebtedness has a special significance with respect to the question of notice.
 

 The general rule as to notice is stated in 1 Jones on ■Chattel Mortgages and Conditional Sales (Bowers Ed.), 251, Section 149: “Under the rule that the incident follows the principal, a mortgage of domestic animals covers the increase of such animals, though it is silent as to such increase, and it is not incumbent upon the mortgagee to take and hold the property as against a purchaser of such increase. * * * But as against innocent third parties, a mortgage of livestock does not create a lien on the increase thereof beyond the time requisite for the suitable nurture of the latter. After the period of nurture has passed, and the young are separated from the mother, a purchaser in good faith for a valuable consideration acquires a title free from the mortgage, but the contrary is true when the purchaser buys with notice of the mortgage.” See
 
 Northwestern Bank
 
 v.
 
 Freeman,
 
 171 U. S., 620, 43 L. Ed., 307, 19 S. Ct., 36;
 
 American Trust & Savings Bank
 
 v.
 
 Gladu,
 
 258 Ill. App., 156; 13 Ann. Cas., 100; Ann. Cas. 1917C, 1173; 10 American Jurisprudence, 806, Section 141.
 

 Notice, which in its legal significance is to be distinguished from knowledge,
 
 (The Shaker-Corlett Land Co.
 
 v.
 
 City of Cleveland,
 
 139 Ohio St., 536, 542) may be actual or constructive. Since the prior mortgage herein expressly covered dams and increase and was properly filed in accordance with Section 8560
 
 et seg.,
 
 -General Code, the fact of filing would constitute con
 
 *532
 
 structive notice. However, we are not required to pass on the question whether notice, merely constructive, would survive the period of nurture, if we find there was actual notice.
 

 When there is actual notice of a chattel mortgage, constructive notice becomes immaterial and inconsequential. In other words, actual notice binds one who acquires a later lien upon property just as effectively as constructive notice. For instance, it was held in
 
 Huber Mfg. Co.
 
 v.
 
 Sweny,
 
 57 Ohio St., 169, 48 N. E., 879, that one taking a subsequent mortgage on chattels with actual notice of an unfiled prior mortgage on the same property takes subject to such prior mortgage.
 

 It is necessary then to inquire whether the defendant company had actual notice within the meaning of that term. If so, plaintiff’s mortgage constitutes a first and best lien.
 

 The principles applicable here are plainly and clearly stated in 2 Pomeroy’s Equity Jurisprudence (5 Ed.), 619, Section 597. After recitals to the effect that vague rumors, hearsay statements, and the like, concerning prior and conflicting claims upon the property involved are not sufficient to put a person, who acquires a right in specific property, upon inquiry, the' text proceeds thus:
 

 “On the other hand, the proposition is established by an absolute unanimity of authority, and is equally true both in its application to constructive notice, and to actual notice not proved by direct evidence but inferred from circumstances, that if the party obtains-knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are' sufficient to put a reasonably prudent man upon in
 
 *533
 
 quiry, then it may be a legitimate, and perhaps even necessary, inference that he acquired the further information which constitutes actual notice. * * * Finally, if it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make any inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.”
 

 In the instant case the • following facts relating to actual notice are undisputed. Prior to the time the subsequent mortgage was executed and delivered Waddington read the advertisement stating that defendant Patrick was selling ten head of cattle. Waddington at the time he took the mortgage knew of the prior mortgage and knew that the two yearlings and three calves were then actually in existence because, as he said, “we checked them.” He testified that he did not •know, when he read the advertisement, how many milch cows Patrick had and did not know until the day of the sale (May 24, 1938) that plaintiff’s mortgage covered the same cattle that he was taking a mortgage on in behalf of the defendant company. According to the defendant company’s mortgage itself, it was taken by Waddington the next day after he read the advertisement and covered ten head of cattle just as the advertisement did. Then the mortgage was filed the day before the day set- for sale in the advertisement.
 

 I11 the light of the uncontradicted facts, how is Waddington’s action to be regarded in equity? He proceeded to close the transaction regardless of the information he had. His reason for doing so is plain. He was not making a loan on behalf of his company. He was getting security for a pre-existing debt and
 
 *534
 
 naturally would take a second mortgage, if lie could not do better. Knowledge of tbe prior mortgage did not deter bim because he was seeking a lien upon the interest the mortgagor had in the property mortgaged, whatever that interest might be. Certainly the defendant company was put upon inquiry as to plaintiff’s mortgage and the property covered thereby. The company “checked” the cattle described in its mortgage but notwithstanding its knowledge of the prior mortgage, did nothing whatever to learn whether it covered the same cattle. The checking was not such an inquiry as a reasonably prudent person would make under the same circumstances.
 

 The defendant company as a matter of law had actual notice within the meaning of the established rule and is bound thereby.
 

 For the reasons given the judgment of the Court of Appeals is reversed and final judgment entered in favor of plaintiff awarding it the first and best lien-on the two yearlings and three spring calves.
 

 Jtidgment reversed and final judgment for appellant.
 

 Weygandt, C. J., Turner, Matthias, Hart and. Zimmerman, JJ., concur.
 

 Bell, J., not participating.