JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant/cross-appellee Barnett Managment, Inc. ("Barnett") appeals from a judgment in favor of plaintiff-appellee/cross-appellant Lanisha Walker ("Walker"), parent and next friend of Antoine L. Crawford, Jr. ("Crawford") following a jury trial. Barnett's four assignments of error all assert that the evidence was insufficient to support the judgment and that the verdict contravened the manifest weight of the evidence. Walker has cross-appealed, arguing that the court erroneously excluded evidence and provided improper instructions and interrogatories to the jury. We find the court's instructions regarding notice were erroneous. Therefore, we reverse and remand for a new trial.
 Procedural History {¶ 2} Walker filed this action on behalf of her son, Antoine L. Crawford, Jr., on September 20, 2002. In her complaint, she alleged that defendants Janice Feinberg and Charlotte Himmel were the owners of a building located at 2877 Van Aken Boulevard. Barnett managed the building for Feinberg and Himmel. Walker and Crawford were residents of Apartment 16 in that building from the time of Crawford's birth in May 1994 until October 2001.
 {¶ 3} The complaint alleged that the premises were contaminated with lead, that Crawford was exposed to it, and as a result he contracted lead poisoning and suffered severe and permanent injuries to his brain and nervous system. Walker alleged that the defendants negligently failed to inspect the premises for lead-based paint, failed to abate it, failed to take steps to protect the child from harm, and failed to warn them. Furthermore, Walker alleged that the defendants breached the Landlord Tenant Act and express and implied warranties of habitability.
 {¶ 4} Barnett answered and counterclaimed, asserting that Walker negligently failed to supervise her child and this negligence was the proximate cause of any injury to the child. The docket indicates that defendants Feinberg and Himmel also answered and counterclaimed, although this document is not included in the record. The claims against Feinberg and Himmel were dismissed without prejudice on July 18, 2003. Their counterclaim, however, apparently remains pending.
 {¶ 5} Walker's complaint and Barnett's counterclaim proceeded to jury trial on July 28, 2003. Before opening statements, the court granted several motions in limine which had been filed by Barnett, including motions to exclude from the evidence Walker's complaints about the condition of the paint in the apartment and newspaper articles concerning lead-based paint. Walker's counsel proffered the testimony he would have presented had evidence been allowed about the condition of the paint.
 {¶ 6} During the course of the trial, Barnett dismissed its counterclaim. Walker dismissed her claim for breach of an express warranty, and the court directed the verdict with respect to her claim for breach of an implied warranty of habitability. The court then submitted to the jury the two remaining claims for negligence and for breach of the Landlord Tenant Act. Eight interrogatories were submitted to the jury in addition to general verdict forms. These interrogatories and the jury's responses were as follows:
 "INTERROGATORY NO. 1 {¶ 7} "Do you find that a dangerous condition existed on the premises of 2877 Van Aken Boulevard, #16?"
 {¶ 8} Seven jurors responded "yes" to this interrogatory.
 "INTERROGATORY NO. 2 {¶ 9} "If you find that a dangerous condition existed on the premises of 2877 Van Aken Boulevard #16, identify in your own words what a [sic] dangerous condition was."
 {¶ 10} Seven jurors responded to this interrogatory as follows: "Lead discovered within the interior and around the exterior of 2877 Van Aken Boulevard, #16."
 "INTERROGATORY NO. 3 {¶ 11} "Did Barnett Management have notice of the existence of the dangerous condition on the premises of 2877 Van Aken Boulevard #16?"
 {¶ 12} Seven jurors answered "yes" to this interrogatory.
 "INTERROGATORY NO. 4(a) {¶ 13} "If Barnett Management had notice of the dangerous condition that existed on the premiss [sic] of 2877 Van Aken Boulevard #16, did Barnett Management have notice of the dangerous condition that existed on the premises of 2877 Van Aken Boulevard #16 prior to receiving a violation notice from the City of Cleveland Department of Health?"
 {¶ 14} All eight jurors answered this interrogatory "no." As a result, they were instructed to skip Interrogatory No. 4(b) and to proceed to interrogatory no. 5.
 "INTERROGATORY NO. 5 {¶ 15} "Did Barnett Management fulfill its duties as a landlord after it had notice of the dangerous condition that existed on the premises of 2877 Van Aken Boulevard #16?"
 {¶ 16} Six jurors responded "no" to this interrogatory.
 "INTERROGATORY NO. 6 {¶ 17} "State the amount of compensatory damages, past and future, that are due to Plaintiff for injuries that occurred after the date that Barnett Management had notice of the dangerous condition that existed on the premises of 2877 Van Aken Boulevard #16."
 {¶ 18} All eight jurors stated that the damages were $100,000.
 {¶ 19} "6(a) What portion of your answer to Interrogatory No. 6 is past damages, if any, to Plaintiff?"
 {¶ 20} All eight jurors stated that past damages were $10,000.
 "INTERROGATORY NO. 6(b) {¶ 21} "What portion of your answer to Interrogatory No. 6 isfuture damages, if any, to Plaintiff?"
 {¶ 22} All eight jurors stated that future damages were $90,000.
 "INTERROGATORY NO. 7 {¶ 23} "What are the portions of the future damages shown in your answer to Interrogatory No. 6(b) that fall into the following:
 {¶ 24} "(A) Future economic loss
 {¶ 25} "(B) Future non-economic loss
 {¶ 26} "The total of these two amounts must equal your answer to Interrogatory no. 6(b)."
 {¶ 27} All eight jurors answered that $90,000 was attributable to future economic loss, and $0 was attributable to non-economic loss.
 "INTERROGATORY NO. 8 {¶ 28} "What are the portions, if any, of future economic loss shown in your answer to Interrogatory No. 79a) [sic], if any, that fall into the following:
 {¶ 29} "I Wages, salaries, or other lost compensation (earning capacity)
 {¶ 30} "II Costs for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations
 {¶ 31} "III Any other expenses brought on by injury to person
 {¶ 32} "The total of future economic loss must equal youranswer to Interrogatory no. 7(a)"
 {¶ 33} All eight jurors responded that all $90,000 of future economic loss was attributable to the cost of care, and $0 was attributable to lost compensation and to other expenses. The jury then returned a general verdict in favor of Walker against Barnett. On August 12, 2003, the court entered judgment on the verdict, which it corrected by a nunc pro tunc entry filed September 11, 2003 to provide as follows:
 {¶ 34} "Jury returns interrogatories and verdict. Verdict for [plaintiff], in the amt. of $100,000.00 ($10,000.00 apportioned to past damages, $90,000.00 apportioned to future damages). Costs to [defendant].
 {¶ 35} "Action in CV 504202 remains stayed until all appeals exhausted in 481998 or parties jointly move to reactivate.
 {¶ 36} "Final.
 {¶ 37} "Court costs assessed to the defendant(s)."
 {¶ 38} Barnett moved the court for judgment notwithstanding the verdict. The court denied this motion on December 4, 2003.
 {¶ 39} On January 2, 2004, Barnett filed a notice of appeal. The appeal was dismissed on January 28, 2004 for lack of a final appealable order because the trial court had not determined that there was no just cause for delay.[1] On the day the prior appeal was dismissed, the trial court granted a joint motion to certify that there was no just reason to delay the appeal in this matter, but that order was inadvertently journalized under a different case number. An order correcting this error was entered February 27, 2004, nunc pro tunc for January 26, 2004. A supplemental order correcting the record was entered on April 19, 2004.
 Law and Analysis {¶ 40} We address Walker's cross-appeal first because it questions rulings which, if erroneous, will require us to vacate and remand the case for a new trial. Such an outcome would moot Barnett's appeal.
 {¶ 41} Walker first asserts that the court erred by granting Barnett's motions in limine and excluding evidence relevant to the question whether Barnett had constructive notice of the lead-based paint hazard on the property. Specifically, she claims the court should have allowed her to present evidence of complaints made to the property manager about chipping and peeling paint in her apartment, and newspaper articles about lead-based paint hazards. She argues this evidence was relevant to the question whether Barnett had constructive notice of the lead-based paint hazard on the property it managed. In response, Barnett asserts that Walker was able to introduce evidence of complaints which Walker and her mother made to Patricia Smiley, the property manager. Therefore, she was not harmed by the court's ruling.
 {¶ 42} Walker's mother, who also lived at the premises, testified that she called Smiley to complain about paint dust and chipping paint from 1993 through 1996. She said that no one ever came to look at or to repair the problem. When the health department inspected the premises in 1997 after the child was diagnosed with lead poisoning, the lead-based paint hazards found by the health department were in the same places she had complained about earlier.
 {¶ 43} The testimony which plaintiff's counsel proffered at the start of trial in response to the court's ruling on the motion in limine provided more detail about the location of the chipping and peeling paint, but in substance was the same as that actually elicited at trial. Therefore, Walker has not demonstrated that she was prejudiced by the court's ruling. Evid.R. 103(A). Accordingly, we overrule the first assignment of error.
 {¶ 44} Second, Walker argues that the common pleas court erred by providing a misleading definition of notice to the jury. The trial court instructed the jury as follows:
 {¶ 45} "A landlord may not be held liable for an injury on the premises unless the landlord first had notice of the presence of the hazard and failed to take steps to repair the premises. Notice may be either actual or constructive.
 {¶ 46} "You are instructed that `actual notice' means notice given directly to or received personally by a party and/or its agent.
 {¶ 47} "In order to find that the landlord had constructive notice of a hazardous condition, you must find that the tenant made reasonable attempts to notify the landlord that the hazardous condition existed, and in this case the presence of lead paint.
 {¶ 48} "The fact that paint on the walls of a premises may be in a deteriorated condition is not constructive notice that the paint actually contains lead."
 {¶ 49} We agree with appellant that this instruction was in error. In Sikora v. Wenzel, 88 Ohio St.3d 493, 2000-Ohio-406, the Ohio Supreme Court held that lack of notice constitutes an excuse from liability for a statutory violation of R.C.5321.04(A)(1) and (2). Lack of notice will create an excuse "if [the landlord] neither knew nor should have known of the factual circumstances that caused the violation." Sikora,88 Ohio St.3d at 498 (emphasis added).
 {¶ 50} The concept of "actual notice" is not limited to notice that a specific condition exists and that it is harmful. "`[I]f it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make an inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.'" G/GM Real EstateCorp. v. Susse Chalet Motor Lodge of Ohio, Inc. (1991),61 Ohio St.3d 375, 380 (quoting Cambridge Prod. Credit Assn. v. Patrick
(1942), 140 Ohio St. 521, 532-33).
 {¶ 51} The court's instructions here did not address this duty of inquiry although the evidence supported such an instruction.[2] "`The fundamental rule for determining the scope of the instruction to be given by the court is that it should be adapted to and embrace all issues made by the pleadings and the evidence.'" Murphy v. Carrolton Mfg. Co. (1991),61 Ohio St.3d 585, 591 n. 3 (quoting 89 Ohio Jur.3d (1989) 354-55, Trial, section 289). Walker orally requested an instruction on a duty of inquiry,[3] but the court overruled that request. "`Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.'" Id. at 591 (quoting Markus Palmer, Trial Handbook for Ohio Lawyers (3d Ed. 1991) 860, Section 36:2). Therefore, we find the common pleas court erred by failing to instruct the jury that a landlord has a duty to inquire about the existence of a harmful condition on his property when the circumstances suggest that the condition may exist.
 {¶ 52} The definition of constructive notice adopted by the trial court was also erroneous. "Constructive notice" cannot be defined as a reasonable attempt by the tenant to provide notice of a hazard to the landlord, as the trial court instructed the jury. Such a definition suggests that a landlord could be held liable if the tenant merely attempted to provide notice of a hazard, even if that attempt was unsuccessful. It also suggests that the notice provided by the tenant must inform the landlord of both the dangerous condition and why it is dangerous. These are not accurate statements of the law.
 {¶ 53} Many cases cite Shroades v. Rental Homes, Inc.
(1981), 68 Ohio St.2d 20, for the proposition that in order to hold a landlord liable for a violation of R.C. 5321.04, "it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, butunsuccessful, attempts to notify the landlord." Shroades,68 Ohio St.2d at 25-26 (emphasis added). However, diligent search has not disclosed a single case (including Shroades itself) in which a tenant's attempt to provide notice was the basis for holding that the landlord had notice of the defective condition.
 {¶ 54} The supreme court's clarification of the notice requirement in Sikora makes clear that a landlord can be held liable if the landlord either knew or should have known of the dangerous condition. It is not reasonable to conclude that a landlord should have known of a dangerous condition simply because the tenant made a reasonable but unsuccessful effort to notify the landlord of the condition. Sikora overruledShroades to the extent that Shroades suggested that a tenant's unsuccessful effort to provide notice to a landlord could constitute "notice." The common pleas court's instruction that constructive notice is proved if the tenant makes a reasonable effort to notify the landlord of the dangerous condition is therefore erroneous.
 {¶ 55} Furthermore, the court's instruction that "[t]he fact that paint on the walls of a premises may be in a deteriorated condition is not constructive notice that the paint actually contains lead," is incomplete. The term "constructive notice" refers to "that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge." Cox v. Estate of Wallace (Dec. 31, 1987), Butler App. No. CA87-06-078. Constructive notice of an unsafe condition may be proved by showing that the unsafe condition "existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights." Beebe v. Toledo (1958),168 Ohio St. 203, paragraph two of the syllabus. Cf. DeVore v. FranklinManor Apts. (Apr. 22, 1999), Franklin App. No. 98AP-779 (no evidence that defect in apartment building had existed for a sufficient length of time for court to infer that owner had notice).
 {¶ 56} Notice that paint is chipping and peeling, in itself, is "not tantamount to notification of the presence of lead-based paint in the premises." Winston v. Sanders (1989),57 Ohio App.3d 28, 29; Murphy v. Leo Baur Realty, Inc. (Oct. 21, 1993), Cuyahoga App. No. 63756. However, when combined with other evidence demonstrating the landlord's knowledge that lead-based paint probably exists on the premises, it is relevant to the question whether the landlord knew or should have known of the hazard of lead-based paint exposure on his premises. Cf. Harrisv. Tigner (1995), 108 Ohio App.3d 152.
 {¶ 57} In this case, the evidence at trial showed that Barnett was aware the premises were constructed in approximately 1940. Barnett was aware that lead-based paint was used in most housing before 1978. He testified he was not concerned about lead-based paint hazards on these premises, however, because the premises had been painted several times since lead-based paints had been removed from the market, so any lead-based paint had been covered by non-hazardous materials several times over. This testimony, combined with testimony that the paint had been chipping and peeling for years and that Barnett's agent was informed of this fact, raised sufficient evidence from which the jury could properly conclude that Barnett knew or should have known that lead-based paint was probably exposed.
 {¶ 58} Therefore, we reverse and remand for a new trial. The remaining assignments of error raised by the parties are rendered moot by this decision, and are therefore overruled.
Reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said cross-appellant recover of said cross-appellee her costs herein.
It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Calabrese, Jr., J., concur.
[1] Case No. CV-504202, was consolidated with this case on July 31, 2003, after the trial of this case had commenced. The claims in that case — an action by Indiana Insurance Company for a declaratory judgment concerning its duty to defend or indemnify the defendants in this action — were bifurcated from those in the present case, and were stayed. Indiana's action remains pending before the common pleas court. Hence, the order in this case was not final and appealable absent a finding of no just cause for delay.
[2] There was evidence that Barnett knew lead-based paint was commonly used prior to 1978, and that this building existed prior to 1978. Barnett acknowledged that this meant the building could contain lead-based paint; he denied that there was any danger because the apartment had been painted several times since leadbased paint had been removed from the market. However, the knowledge that lead-based paint could have been used on the premises, taken together with the evidence of notice that the paint was chipping, would lead a reasonable person to conclude that leadbased paint may have been exposed, and created a duty to inquire whether the underlying coats of paint were lead-based. The failure to do so creates the inference of actual knowledge that the paint underneath was lead-based and dangerous.
[3] The instruction Walker requested was couched in terms of constructive notice. Walker asked the court to instruct the jury that "[c]onstructive notice is information or knowledge of a fact imputed by law to a person although he may not actually have knowledge of it but he could have discovered the fact by proper diligence, and the situation was such as to cast upon him the duty of inquiring into it."