RICHARDSON et al., Appellants,

v.

BOES et al., Appellees.

[Cite as *Richardson v. Boes,* 179 Ohio App.3d 418, 2008-Ohio-6173.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–08–1015.

Decided Nov. 21, 2008.

Lawrence J. Buckfire, for appellants.

Stephen E. House, for appellees.

SINGER, Judge.

{¶ 1} This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas regarding claims against a landlord for damages resulting from the ingestion of lead-based paint. Because we conclude that genuine issues of material fact remain in dispute and that the trial court erred in granting summary judgment, we reverse.

{¶ 2} Appellant, Merrier Richardson, individually and on behalf of her minor daughter, Keianda, born in 1993, sued her former landlords, appellees, Melvin

Boes and his wife, for alleged lead poisoning injuries to appellant's daughter.[1] The claims stemmed from appellees' rental of a house to appellant in 1995. After conducting discovery, appellees filed a motion for summary judgment, and appellant responded in opposition. Deposition testimony, discovery, and affidavits filed in support of the motion and responses provided the following information.

{¶ 3} Appellant's deposition testimony indicated that from January to approximately six or seven months later in 1995, she and her two children lived in a rental house ("Bigelow house") owned by appellee. Appellant stated that she lived there for about one year, but moved after her daughter, Keianda, experienced health problems related to lead poisoning. Appellant stated that prior to living in the Bigelow house, Keianda had never experienced any medical problems. When appellant first inquired about the rental, appellee met her and showed her the house. She stated that the interior of the house needed some repairs, and she noticed paint chipping from the walls in the kitchen, living, and dining rooms. Appellee agreed to fix the needed repairs in the kitchen and to repaint.

{¶ 4} Appellant said she signed a lease that day and moved into the property the next day with Keianda, who was then one year old, and her son, who was then about three years old. She said that appellee fixed problems with the water and patched a hole in the kitchen wall. During the ten months that appellant lived in the house, however, appellee never painted any of rooms, despite repeated telephone calls by her requesting that he fulfill his promise to do so. Appellant said that the local health department became involved when her daughter, Keianda, became ill in June 1995. Appellant had taken Keianda, who was very ill with a high fever and was "throwing up," to a hospital emergency room. The hospital then referred her to a doctor and program at the Lucas County Health Department, which she later discovered involved the lead-poisoning program.

{¶ 5} Keianda was tested for lead poisoning, was found to have levels more than six times the accepted levels, and began treatment, including injections. The health department told her to contact her landlord to have the house repainted with nonlead-based paint. Appellant then said she called appellee several times to report the health department's findings and directive. She said appellee told her it was her responsibility to paint, even though he had promised to repaint the kitchen pursuant to the original repair agreement. Appellant then

---

1. Appellees in this case are both Melvin Boes and his wife, both owners of the rental house. We will primarily refer to appellee Melvin Boes throughout our discussion, since appellant dealt mainly with him regarding anything to do with the rental home. Likewise, we will refer primarily to Merrier Richardson as appellant, even though her daughter is also represented and is an appellant.

told a health department representative appellee's response. The health department told her that if her landlord would not paint, appellant would have to move from her residence, or the children services agency would be contacted. According to appellant, she moved out of the home the next day. She called appellee to tell him why she was vacating the premises. Appellant stated that although the health department told her that the Bigelow house would be inspected and tested for the presence of lead, she did not know whether that had ever occurred.

{¶ 6} Appellant said that although lead levels in Keianda's blood declined, the child continued to have medical and neurological problems. Keianda continued in treatment, but still displayed behavior problems and mental disabilities that, according to her doctors and counselors, resulted from brain damage caused by the lead poisoning.

{¶ 7} Appellee's deposition revealed that he belonged to the Real Estate Investors Association from 1990 or 1992 to 1995. He became a licensed real estate agent in 1996 or 1997 and worked for Disalle Real Estate company. He said that he became aware of the dangers of lead-based paint in 1996 or 1997, when he worked at the real estate company. Appellee said he first became a landlord with residential rental property in 1985 and owned ten to 12 properties at one time.

{¶ 8} Appellee stated that when he became a landlord, he never sought information from the health department or local building code department about any rules or regulations pertaining to rental properties. He said that the only properties that required certification or inspection were those that were "Section 8" government housing. Appellee acknowledged that he had two Section 8 properties: a duplex that he owned from 1985 to 1995 and a house. He did not recall receiving or seeing any information from either the federal or local government agencies alerting him to lead-based paint problems. Appellee then stated that he acquired the Bigelow house in 1991. He believed that it had been built in the 1920s or 1930s. It was not a Section 8 house and had never been inspected by any agency until the health department's involvement when appellant was a tenant.

{¶ 9} Appellee then said that after he purchased the Bigelow house, he repainted only a bathroom because the rest of the house had been repainted. He said that he usually repainted the entire home between tenants, including painted woodwork but in this case excluded any room that he thought did not need it. He said he noticed and scraped chipped and peeling paint on the exterior when he was repainting that area but did not notice any chipping on the interior walls or windows.

{¶ 10} Appellee stated that after appellant moved into the house, he would stop by to collect the rent, which was paid on time. After three or four months, he

said he noticed that the woodwork that he had repainted was chipped, but he attributed the damage to the children "beating on it." He said that he thought appellant had complained about the chipped woodwork, but did not specifically recall that she told him directly. After five or six months, appellant informed him she was moving out, at the direction of the health department, because her child had lead poisoning from the house. Although she had not been specific, appellee presumed it was from the paint that the children had chipped loose. When appellant told him that her child had lead poisoning, appellee said that he had an understanding and knowledge that lead-based paint in older homes might pose a health hazard to children. Appellee stated that after appellant moved out, he had to repaint the interior walls, window ledges, base boards, and bathroom walls.

{¶ 11} Appellee said he never received any notice or complaint from the health department about lead-based paint at the Bigelow house. He also said that when appellant moved into the house, federal law did not require a disclosure statement or pamphlet regarding lead-based paint in older homes. He said that the notice was not required until 1996 or 1997, after which he began to distribute the required pamphlets. Appellee did not have any tax or rent records from when appellant lived in the house, which he sold in 1997.

{¶ 12} Appellant also presented the following relevant evidence from expert witnesses and other reports:

{¶ 13} (1) Toledo Health Department records of 11 lab-test results showing elevated lead levels in Keianda's blood, from June 12, 1995, to October 9, 1998.

{¶ 14} (2) Affidavit and report of Charles Long, Lead Risk Assessor with the Ohio Department of Health, regarding lead-based paint inspection conducted in August 2007.

{¶ 15} (3) Affidavit of Roger L. Wabeke, a board certified industrial hygienist, chemical safety engineer, and occupational and environmental toxicologist, regarding the source of Keianda's lead poisoning.

{¶ 16} (4) Affidavit of Guyla Acsadi, M.D., board certified in neurology and psychiatry with special qualifications in child neurology, stating that Keianda's brain damage and neurological and neuropsychological impairments resulted from her exposure to lead-based paint.

{¶ 17} Appellees replied to appellants' response and filed a motion in limine to exclude the two medical expert witnesses' testimony from trial. Appellants then filed a sur-reply. The trial court ultimately denied appellees' motion in limine and found that appellants' claims were not barred under R.C. 2305.131. Nevertheless, the trial court then dismissed appellants' federal claim and granted summary judgment in favor of appellees as to their state claim. The trial court

concluded that appellants had failed to show that appellees had either actual or constructive notice that the house contained lead-based paint that could constitute a hazard to children.

{¶ 18} Appellants appeal from that judgment, arguing the following sole assignment of error:

{¶ 19} "The trial court erred to the prejudice of Plaintiffs–Appellants when it granted summary judgment to Defendants–Appellees because there were genuine issues of material fact on whether the Defendants–Appellees had actual and/or constructive notice of the existence of lead-based paint hazards on there rental property."

{¶ 20} The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Civ.R. 56(C); *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Consequently, an appellate court reviews summary judgments de novo, independently, and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 21} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude "that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

{¶ 22} Thus, a motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then produce evidence in the record as to any issue for which that party bears the burden of production at trial. Civ.R. 56(C); *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 298, 662 N.E.2d 264, limiting *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

{¶ 23} The party opposing the motion is entitled to have all admissible evidence construed most favorably in his behalf. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 151–152, 66 O.O.2d 311, 309 N.E.2d 924. Therefore, if the party opposing a motion for summary judgment can show, through affidavits, depositions, or otherwise, the material being construed most strongly in his favor, that he has presented a genuine issue of a material fact about which reasonable minds could differ, that party is entitled to have the motion for summary judgment denied.

{¶ 24} R.C. 5321.04(A) provides:

{¶ 25} "(A) A landlord who is a party to a rental agreement shall do all of the following:

{¶ 26} "(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

{¶ 27} "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition."

{¶ 28} A landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or (2) constitutes negligence per se, but a landlord will not be excused from liability under either section if he either knew or should have known of the factual circumstances that caused the violation. See *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 727 N.E.2d 1277, syllabus.

{¶ 29} The concept of "actual notice" is not limited to notice that a specific condition exists and that it is harmful. " '[I]f it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make an inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.' " *G/GM Real Estate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc.* (1991), 61 Ohio St.3d 375, 380, 575 N.E.2d 141, quoting *Cambridge Prod. Credit Assn. v. Patrick* (1942), 140 Ohio St. 521, 532–533, 24 O.O. 546, 45 N.E.2d 751.

{¶ 30} Constructive notice will suffice in a case brought under R.C. 5321.04(A)(2). See *Burnworth v. Harper* (1996), 109 Ohio App.3d 401, 406, 672 N.E.2d 241; *Blakley v. Riley* (Jan. 7, 1992), 10th Dist. No. 91AP–597, 1992 WL 1163. The term "constructive notice" refers to "that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge." *Cox v. Estate of Wallace* (Dec. 31, 1987), 12th Dist. No. CA87–06–078, 1987 WL 32746. Constructive notice of an unsafe condition may be proved by showing that the unsafe condition "existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights." *Beebe v. Toledo* (1958), 168 Ohio St. 203, 6 O.O.2d 1, 151 N.E.2d 738, paragraph two of the syllabus.

{¶ 31} Notice that paint is chipping and peeling, in itself, is "not tantamount to notification of the presence of lead-based paint in the premises." *Winston v. Sanders* (1989), 57 Ohio App.3d 28, 29–30, 565 N.E.2d 1280; *Murphy v. Leo Baur Realty, Inc.* (Oct. 21, 1993), 8th Dist. No. 63756, 1993 WL 425353.

However, when combined with other evidence demonstrating the landlord's knowledge that lead-based paint probably exists on the premises, it is relevant to the question whether the landlord knew or should have known of the hazard of lead-based paint exposure on his premises. *Walker v. Barnett Mgt., Inc.*, 8th Dist. Nos. 84188, 84210, 2004-Ohio-6632, 2004 WL 2847810, ¶ 57 (knowledge that premises likely contained lead-based paint and that woodwork was chipping created duty to inquire). See also *Harris v. Tigner* (1995), 108 Ohio App.3d 152, 670 N.E.2d 304.

{¶ 32} In this case, the evidence shows that allegedly, appellee did not receive information about lead poisoning from his formal real estate training and licensure until 1996 or later, after appellant lived in the rental house. Nevertheless, appellee's deposition testimony clearly indicates that even before he received formal training, he was aware that he had the understanding and knowledge that lead-based paint was found in older homes, such as the Bigelow house, which might pose a health hazard to children. Therefore, appellee knew, even in 1995, that the home he rented to appellant likely contained lead paint.

{¶ 33} Moreover, appellee said that when appellant told him of Keianda's lead poisoning, he immediately assumed it was from paint in the house. He acknowledged that within a few months after appellant moved in, she complained about chipping paint. Nonetheless, he blamed the chipping on the two small children and chose not to investigate whether lead-based paint was present, even though the children would be particularly susceptible to lead-poisoning injuries.

{¶ 34} Consequently, for the purposes of summary judgment, appellants established sufficient evidence that appellees had constructive knowledge of the existence of lead-based paint in the Bigelow house. Therefore, we conclude that the trial court erred in granting summary judgment in favor of appellees, because material issues of fact remain in dispute, and appellees are not entitled to judgment as a matter of law.

{¶ 35} Accordingly, appellants' sole assignment of error is well taken.

{¶ 36} The judgment of the Lucas County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this decision.

Judgment reversed.

HANDWORK and OSOWIK, JJ., concur.