DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Catherine Lowery, as guardian of her minor son, Michael Lowery, appeals from an entry of summary judgment that was entered against her and in favor of appellees, David Ondrus and Angela Ondrus. For the reasons that follow, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} The evidence in this case, viewed most strongly in favor of appellant, is as follows. In 1978, appellees purchased residential property at 436/438 Potter Street, Toledo, Lucas County, Ohio, for purposes of using it as a rental property. The residence on the property is a two-family unit, built in 1902.
 {¶ 3} Sometime in October 1993, appellant, her newborn son, Michael, and Michael's father, John Lowery, moved into 438 Potter, pursuant to a written lease agreement. Appellant testified that when she first saw the property, she noticed chipped paint in certain areas of the interior of the home and on the exterior of the home. She further testified that appellant had assured her that the problem would be taken care of. (This testimony is in conformity with testimony by David Ondrus, wherein he stated that would see chipping or peeling paint on the interior of his rental properties — usually when old tenants would move out — but then he would repair those defects before a new tenant would move in.)
 {¶ 4} On October 20, 1994, approximately one year after moving into appellees' rental property, Michael was diagnosed with elevated blood lead levels of 20 ug/dl. By the time he and his family moved out of the property in the fall of 1995, his lead levels had reached 54 ug/dl.
 {¶ 5} Appellant acknowledged that from the time her family moved into the property to the time Michael was diagnosed with lead poisoning, neither she nor her husband ever contacted appellees regarding the presence of lead on the property. Only *Page 3 
after Michael got sick did she inform David Ondrus that she wanted him to come in and paint because there was lead discovered in the house.
 {¶ 6} Appellees, although they deny any recollection whatsoever of appellant or her family, do acknowledge that, at some point in time, they received a notice from the health department informing them of the presence of lead-based paint on one of the bedroom windows at the subject property. In response to this notice, David Ondrus followed the health department instructions; specifically, he stripped all of the paint off of the subject window, applied the recommended product, and then re-painted and reinstalled the window. After the work was completed, Angela Ondrus called the health department to see if there was anything else that needed to be done. Mrs. Ondrus was informed that as long as the work had been performed and there were no further violations or notices, then the issue was taken care of.
 {¶ 7} On August 16, 2006, appellant filed a complaint against appellees, seeking to recover damages for personal injuries allegedly caused by Michael's ingestion of lead-based paint during appellant's tenancy in the rental property owned by appellees. The complaint contained claims for violation of federal and state statutes and municipal ordinances and building codes.
 {¶ 8} Following discovery, on November 14, 2007, appellees filed their motion for summary judgment. In appellant's response to the motion, appellant conceded that her federal claim should be dismissed. Regarding her state law claims, appellant acknowledged that, in order to establish a cause of action, she would have to demonstrate *Page 4 
that prior to appellant's tenancy and Michael's diagnosis of lead poisoning, appellees had actual or constructive notice that the home contained lead-based paint hazards. On March 7, 2008, the trial court entered a judgment granting appellees' motion for summary judgment.
 {¶ 9} Appellant timely appealed the trial court's judgment, raising the following assignments of error:
 {¶ 10} I. "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS [sic] WHEN IT GRANTED SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT ON WHETHER THE DEFENDANTS-APPELLEES HAD ACTUAL AND/OR CONSTRUCTIVE NOTICE OF THE EXISTENCE OF LEAD-BASED PAINT HAZARDS ON THEIR RENTAL PROPERTY, PRIOR TO BEING INFORMED THAT THE MINOR PLAINTIFF HAD LEAD POISONING."
 {¶ 11} II. "THE TRIAL COURT ERRED WHEN IT HELD THAT WALKER V. BARNETTMGT., INC., 8TH DIST. NOS. 84188, 84210, 2004-OHIO-6632, IS NEITHER ON POINT OR BINDING."
 {¶ 12} We note at the outset that appellant's two assignments of error involve overlapping issues. As a result, they will be reviewed together in this decision.
 {¶ 13} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ. R. 56(C) provides: *Page 5 
 {¶ 14} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 15} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party.Ryberg v. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 16} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ. R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 17} R.C. 5321.04(A) pertinently provides:
 {¶ 18} "(A) A landlord who is a party to a rental agreement shall do all of the following: *Page 6 
 {¶ 19} "(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 {¶ 20} "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; * * *."
 {¶ 21} A landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or (2) constitutes negligence per se; but a landlord will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation. Sikora v. Wenzel, 88 Ohio St.3d 493, 2000-Ohio-406, syllabus. Either actual or constructive notice is sufficient to constitute "notice" to the landlord. See Richardson v. Boes, 6th Dist. No. L-08-1015, 2008-Ohio-6173.
 {¶ 22} As stated by this court in Richardson, supra, "The concept of `actual notice' is not limited to notice that a specific condition exists and that it is harmful." Id., at ¶ 29. "`[I]f it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make an inquiry, or having begun it fails to prosecute in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.'" G/GM RealEstate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc. (1991),61 Ohio St.3d 375, 380 (quoting Cambridge Prod. Credit Assn. v. Patrick (1942),140 Ohio St. 521, 532-33).
 {¶ 23} "Constructive notice," on the other hand, refers to "that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge." Cox v. Estate ofWallace (Dec. 31, 1987), 12th Dist. No. CA87-06-078. *Page 7 
Constructive notice of an unsafe condition can be proven by showing that the unsafe condition "existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights." Beebe v. Toledo (1958), 168 Ohio St. 203, paragraph two of the syllabus.
 {¶ 24} Notice that paint is chipping and peeling, by itself, is "not tantamount to notification of the presence of lead-based paint in the premises." Winston v. Sanders (1989), 57 Ohio App.3d 28; Murphy v. LeoBaur Realty, Inc. (Oct. 21, 1993), 8th Dist. No. 63756. "However, when combined with other evidence demonstrating the landlord's knowledge that lead-based paint probably exists on the premises, such notice is relevant to the question of whether the landlord knew or should have known of the hazard of lead-based paint exposure on his premises."Richardson, supra, at ¶ 41.
 {¶ 25} In the instant case, we note that appellees, as landlords, are charged with constructive knowledge of relevant City of Toledo Health and Housing codes, including Lead Paint Poisoning Regulation A 1-72, and Chapter 1759 — Toxic Substances. Cf, Burdick v. Nevel (Apr. 20, 1999), 10th Dist. No. 98AP-697 (holding that landlords were charged with constructive knowledge of smoke detector requirements of the Columbus City Codes). Lead Paint Poisoning Regulation A 1-72 relevantly provides:
 {¶ 26} "1.01 It is hereby found that there exist and may in the future exist within the City of Toledo premises, dwellings, dwelling units, rooming units or facilities *Page 8 
occupied or used by children which their maintenance use or occupancy affect or are likely to affect adversely the public health (including the physical, mental and social well being of persons and families), safety and general welfare, as affected by lead paint interiors."
 {¶ 27} Chapter 1759 relevantly provides:
 {¶ 28} "1759.02. Lead based paint.
 {¶ 29} "(c) Every owner of a dwelling, dwelling unit, rooming house and/or rooming unit * * * shall maintain such dwelling, dwelling unit, rooming house and/or rooming unit * * * free from hazards to health due to the presence of lead based paint or other toxic substances. * * *"
 {¶ 30} Chapter 1759.02(a)(1) provides:
 {¶ 31} "A lead based paint hazard' exists when an interior or exterior surface coated with lead based paint is readily accessible to and chewable by children under six years of age even though such surface is intact and its integrity is uninterrupted, or when the integrity of a surface containing lead based paint is interrupted or not intact."
 {¶ 32} Based on the foregoing, we find that appellees are charged with constructive knowledge of the hazards of lead-based paint in housing, particularly as they relate to children.
 {¶ 33} Lacking from the record, however, is any evidence to suggest that, prior to Michael's diagnosis, appellees had received any information indicating that a lead-based *Page 9 
paint was likely to exist on the Potter Street property.[1] In the absence of such evidence, we find that summary judgment was properly granted in favor of appellees, and against appellant.
 {¶ 34} Contrary to appellant's contention, the instant case is, in fact, factually distinguishable from Walker v. Barnett Management,Inc., 8th Dist. Nos. 84188, 84210, 2004-Ohio-6632. In Walker, the landlord knew: (1) that lead-based paint was commonly used prior to 1978; and (2) that the building at issue existed prior to 1978. In addition, the landlord acknowledged that, on the basis of those facts, the building could contain lead-based paint. In the instant case, there was no evidence to suggest that either appellee knew that lead-based paint was used prior to 1978.
 {¶ 35} Similarly distinguishable is Harris v. Tigner (1995),108 Ohio App.3d 152, 155, where the landlord's deposition testimony made "it quite clear that he was aware the home he rented to the appellants surely contained lead paint."
 {¶ 36} So too, in Richardson v. Boes, supra, the evidence demonstrated that, unlike in the instant case, the landlord knew that the subject rental property "likely contained lead paint." Id. at ¶ 32.
 {¶ 37} For all of the foregoing reasons, appellant's first and second assignments of error are found not well-taken. *Page 10 
 {¶ 38} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, P.J., Thomas J. Osowik, J., CONCUR.
[1] Evidence cited by appellant that David Ondrus: (1) had spent time working in a hardware store; and (2) had performed work with Toledo Edison that involved lead-coated electrical lines was simply not sufficient to satisfy the notice requirement in this case. *Page 1