G/GM Real Estate Corporation, a.k.a. G/G Real Estate Corporation, Appellee, *v.* Susse Chalet Motor Lodge of Ohio, Inc., Appellant.

[Cite as *G/GM Real Estate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc.* (1991), 61 Ohio St.3d 375.]

(No. 90–1423—Submitted May 22, 1991—Decided August 14, 1991.)

378

*Spurlock, Sears, Pry & Griebling* and *G. Scott McBride,* for appellee.

*Ashworth & McKinniss* and *Ted M. McKinniss,* for appellant.

WRIGHT, J. The court would be reluctant to call the precedents in this case elderly, being mindful of adjectives that might be perceived as pejorative, but they were found in volumes yellowed at the margins that left a trail of velvety silt when disturbed.

The question is which trail to follow. The Court of Appeals for Marion County chose the venerable *Novogroder v. Di Paola, supra.* For the reasons set forth, we choose instead the analysis of our nineteenth century colleagues found in *Rife v. Lybarger* (1892), 49 Ohio St. 422, 31 N.E. 768.

This case sounds in contract, one for the sale of real estate. The terms of that contract set forth in Section 1, Article XV what the seller was obligated to provide: " * * * a Limited Warranty Deed conveying fee simple title, good and marketable, free and clear of all mortgages or deeds of trust * * *."

Does the existence of the improperly recorded memorandum of lease represent an impediment of the sort contemplated by the quoted portion of the contract? We think not. There is no dispute that the memorandum did not meet the statutory requirements for filing and, therefore, should not have appeared on the record of title at all. Though appellee cited the memorandum at the closing as a "defect or encumbrance" that rendered the title unmarketable, in fact, the alleged "defect or encumbrance" was a lapsed lease whose recording itself was defective. Further, a lease that is not binding on the purchaser would not render a title unmarketable. See *Zackman v. Dick* (1913), 1 Ohio App. 36, 24 Ohio C.D. 450, 15 Ohio C.C. (N.S.) 593. There is also little dispute, in the words of the trial court's lucid memorandum of decision, that " * * * the closing would have taken place but for the failure of plaintiff to produce the funds."

The contract did not require the appellant to produce a cloud-free title as asserted by the court of appeals' opinion. Even the *Novogroder* decision, relied upon by that court, noted:

"This contract was peculiarly worded; but it is not the province of the court to make contracts, but to enforce them. It is true that Novogroder may be captious, and his lawyers and his present counsel may be hypercritical, but if he contracted for a cloudless title he has a right to have a cloudless title. * * *

" * * *

" * * * If this suit were based on a contract requiring simply a marketable title, the question which we would have to solve would be different." *Id.* at 377–378, 30 Ohio C.C.(N.S.) at 423–425.

The court of appeals did not cite to the earlier *Rife* decision for its characterization of *Novogroder*, but there can be little doubt where the *Novogroder* court found its phrasing:

" 'Captious objections to the title ought not to prevail, when made by a purchaser who seeks to avoid the performance of his contract.' " *Rife, supra,* 49 Ohio St. at 429, 31 N.E. at 770, quoting *Walsh v. Barton* (1873), 24 Ohio St. 28, 40.

Captiousness, absent a contract provision to support it, will not be viewed any more kindly today than it was one hundred eighteen years ago. The real cloud here was the one employed by the appellee in its attempt to divert attention from its failure to secure financing for the purchase. Paraphrasing the language of *Rife, supra,* we hold that an objection to a title must have some substantive merit in order to defeat a claim for specific performance of a contract for the sale of real estate made by a vendor charged with producing "good and marketable" title. A title need not be free of any possible defect in order to be marketable, but must be in a condition as would satisfy a buyer of ordinary prudence. An improperly recorded memorandum of lease intended to provide notice of a lease that has lapsed by its own terms, or has been cancelled for breach of its conditions, does not constitute a defect sufficiently substantive to warrant a purchaser's refusal to perform his obligations under a contract for sale of real estate.

There remains an issue of the burden of inquiry in an instance where a question is raised as to the marketability of title. The trial court held that a purchaser who has actual notice of a purported defect in a title has an affirmative duty to make a reasonable inquiry to determine the nature and effect of that defect. Failure to make such reasonable inquiry, the trial court held, will result in the purchaser being charged with all the facts that could

have been learned had the inquiry been made. However, the trial court cited no authority to support that position and there appears to be none in Ohio directly on point. But *Cambridge Prod. Credit Assn. v. Patrick* (1942), 140 Ohio St. 521, 24 O.O. 546, 45 N.E.2d 751, while not a real estate case, lends substantial support to the concept espoused by the trial court:

" ' * * * [T]he proposition is established by an absolute unanimity of authority, and is equally true both in its application to constructive notice, and to actual notice not proved by direct evidence but inferred from circumstances, that if the party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate, and perhaps even necessary, inference that he acquired the further information which constitutes actual notice. * * * Finally, if it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make an inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.' " *Id.* at 532–533, 24 O.O. at 551, 45 N.E.2d at 756–757, quoting 2 Pomeroy's Equity Jurisprudence (5 Ed.) 619, Section 597. Also, " * * * [the purchaser] cannot act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of inquiry is naturally suggested by circumstances known to him." *Kirsch v. Toizier* (1894), 143 N.Y. 390, 397, 38 N.E. 375, 377. In the instant case, "reasonable inquiry" would have revealed that the actual lease evidenced by the memorandum of lease had lapsed by its own terms, not to mention the breaches of its conditions asserted by appellant in an affidavit provided to appellee's title company. As the record makes abundantly clear, the real problem was a lack of funds to close the sale, not an unmarketable title. Consequently, we find a breach of the Agreement by the appellee. The trial court cogently analyzed the disposition of the funds at issue. The $25,000 downpayment represented liquidated damages for a breach under Section 1, Article X of the Agreement; the first payment of an additional $10,000 was in return for an extension of the closing date, according to the provisions of Section 2, Article XVII of the Agreement. The payment was to be applied to the purchase price at the time of closing. Absent closure, logic and the reasoning of *Ritchie v. Cordray* (1983), 10 Ohio App.3d 213, 10 OBR 287, 461 N.E.2d 325, support the finding that the money belongs to appellant. The payment was consideration for the extension of time for closing. Appellee would receive credit against the purchase price only if it purchased the property; otherwise, the payment belonged to appellant in return for allowing more time for closing. The second $10,000 payment was made by President Harding Inn Corp., which the record indi-

cates was involved in this transaction, but is not a party to this lawsuit. Nor is there is any evidence in the record that appellee is the assignee of President Harding Inn Corp. Thus, appellee can have no claim for the return of funds, even though the parties agree that the second payment was made to benefit appellee in terms of buying more time. Appellant is entitled to keep the second payment as well.

The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

RESNICK, J., dissents.