OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Nathan Curtis, filed March 26, 2008. On August 4, 2006, Curtis shot Ronald Wakefield once in each leg after taking him to a remote area, because Wakefield allegedly stole 25 pounds of marijuana from Curtis. On July 9, 2007, Curtis pled guilty to one count of felonious assault, in violation of *Page 2 
R.C. 2903.11(A)(2), a felony of the second degree, and to one amended count of attempted kidnaping, in violation of R.C. 2923.02 and R.C. 2905.01(A)(3), also a felony of the second degree. The State dismissed gun specifications on the above offenses, and it also dismissed one count of aggravated assault, with a gun specification, and one count of abduction, with a gun specification, in exchange for Curtis' pleas.
 {¶ 2} Curtis and the State further agreed that Curtis would cooperate with the A.C.E. Drug Task Force. According to counsel for Curtis at Curtis' plea hearing, "The position of the State is that if Mr. Curtis fulfills his obligation, that the recommendation would be for a four-year sentence with a further recommendation of judicial release after 12 months. * * * and obviously his behavior with the Drug Task Force and during the 12-month period of time he's in prison will be determinative of the Court's position. But that is not in writing for obvious reasons." The State indicated its agreement with Curtis' summary.
 {¶ 3} The court then advised Curtis as follows: "It is important for you to understand the maximum penalties that could be imposed in regard to the charges to which you are pleading. I am going to advise you that the maximum prison sentence that the court could impose is 16 years and the maximum fine is $30,000.00 or both. Do you understand that?" Curtis indicated his understanding.
 {¶ 4} The Petition to Enter Plea Form that Curtis signed and initialed provides in paragraph 10, "My lawyer has informed me that the maximum punishment which the law provides for the offense(s) charged in the indictment/ information is 16 years of imprisonment * * * ."
 {¶ 5} The trial court further instructed Curtis as follows: "I want you to fill out your *Page 3 
questionnaire for the Probation Department, see that it gets into the hands of the Probation Department as promptly as you can, see to it that an interview is set up with the Probation Department and present yourself with a positive attitude during that interview, being clean, sober, law-abiding between now and the time that occurs."
 {¶ 6} The trial court sentenced Curtis on September 5, 2007. On that date, Curtis was already in jail, having tested positive for marijuana in the course of a urinalysis conducted by the Probation Department. Before imposing sentence, the court indicated that Curtis' lawyer did an outstanding job on Curtis' behalf, noting, "there's limitations to what an attorney can do, and what I'm about to address is what you've done and what you haven't done." The court then noted that Curtis failed to timely appear at the Probation Department for his interview until his attorney contacted him and urged him to go. Curtis finally appeared on his "own time" without his questionnaire. The court noted, "When the interview took place, it was the clear impression of the Probation Officer who conducted this interview that you showed no remorse over the incident. Your position was that the victim in this case, Mr. Wakefield, stole a substantial amount of marijuana from you, being 25 pounds. You knew where the victim was. You went to argue with him and you took him to the country and you shot him." The trial court noted that Curtis indicated to the Probation Officer that he was currently selling marijuana, and that Curtis tested positive for marijuana and was currently in jail for that offense. The court noted that Curtis was 26 years old and his record contained 13 probation violations and a commitment to Department of Youth Services. The trial court then sentenced Curtis to eight years for felonious assault and eight years for attempted kidnaping, to be served consecutively, for a total term of 16 years. Curtis filed a motion to stay judgment, which the court overruled on October 8, 2007, *Page 4 
noting, "Defendant is an extremely dangerous and unremorseful violent drug dealer."
 {¶ 7} On October 15, 2007, Curtis filed a "Motion to Vacate Plea and for Postconviction Relief," arguing ineffective assistance of counsel. According to Curtis' Motion, "had counsel correctly explained the relevant law and the possible sentences, he would not have chosen the guilty plea with a potential 16-year term of imprisonment." Attached to the Motion is Curtis' Affidavit. The trial court held a hearing on the Motion on January 2 and 18, 2008, and overruled it. At the hearing, Curtis, his attorney, Bruce May, Director of the Greene County Agencies for Combined Enforcement, and Tiffany Caldwell, with whom Curtis has a son, testified.
 {¶ 8} At the hearing, Curtis testified as follows:
 {¶ 9} "The whole time I was out, even when I had my plea bargain, [counsel] told me I was going to be doing two years, over to April. Then I was supposed to go to trial July the 12th . Then he comes and tells me that they're trying to give me six years. Then he comes with another deal, saying if I go ahead and cooperate with the State that I'll have a four-year plea bargain with a deal of one year, that I'll do one year and I will be released after one year and I will be on probation.
 {¶ 10} * *
 {¶ 11} "He told me the only way I wouldn't get out in one year was if I was getting in any type of trouble inside the penitentiary. Even when we came to Court and the Prosecution requested a 16-year sentence he told me — he said that's the Prosecution's job to say that because the victim's family was sitting here in the Courtroom.
 {¶ 12} "So the whole time I never had no — there was no type of legal representation *Page 5 
that told me it was even possible for me to get 16 years. The only thing I had to do was not worry about anything, no PSI packet. I wasn't going to be drug tested by the Probation Department downstairs. My agreement solely consisted of my cooperation with the Drug Task Force, in which I did do everything I was supposed to do."
 {¶ 13} Regarding his obligations to the Task Force, Curtis testified, "When I made my plea with the Task Force, they told me, one, I didn't have to do anything that would endanger my family. Two, I didn't have to talk about none of my friends nor my family in anything that I was going to do to cooperate with them. And, three, they told me I didn't have to make no controlled buys. They said that I knew — they felt that I knew plenty of information, that the information that I gave them would be substantial enough. And, four, that they were supposed to set me up with an apartment in Bayberry Cove, which they never did, for me to lure people there to buy drugs or convey any type of drug activity."
 {¶ 14} Bruce May testified that Curtis agreed "to make multiple purchases of illicit drugs from at least three separate individuals supplying illicit drugs to the greater Greene County area. All purchases of drugs must be of weights equaling at least three times bulk for that specific drug. These purchases of illicit drugs must result in felony charges that will be approved by the Greene County Prosecutor's Office." May testified that Curtis did not complete any buys but that he "countered the efforts to have those buys come to fruition from potential Defendants." He also stated, Curtis "was asked to maintain daily contact with the Controlling Detectives and over 50 percent of the times he was not available or would not call them during the contract."
 {¶ 15} Counsel for Curtis testified regarding his lengthy plea negotiations on Curtis' *Page 6 
behalf. Counsel stated that he went over the plea form and the potential maximum sentence with Curtis, and that, following the State's final offer, he told Curtis he would receive four years in prison, "[i]f he followed through with what he was supposed to do" with the Task Force. Counsel described Curtis' sentence as follows: "it wasn't a stipulated four years. It was four years with no opposition or an agreed judicial release after one year, assuming all the other normal circumstances, no violations in the institution, so on and so forth." Counsel stated that the prosecutor indicated to him at sentencing that the State was going to ask for the maximum sentence, and that he predicted that Curtis would receive a four to six year sentence. Defense counsel was asked if he informed Curtis that "the State always asks for the maximum sentence and the Judge is going to give you four," and counsel responded, "I don't believe that I informed him of what the Judge was going to give him." When asked if he promised Curtis that his sentence would be within the range of four to six years, he responded, "No. It was sort of out of my hands at that point." According to defense counsel, Curtis "knew what the potentials were. Ultimately the potential turned into a reality." Counsel stated that he was unaware that the State considered the contract breached until the day of sentencing. According to counsel, "the bond violation substantially impaired Nathan's ability to successfully complete what he could do."
 {¶ 16} The trial court determined that Curtis was not credible and "beyond a reasonable doubt [found] Defendant was specifically advised of the maximum sentence he could have received by entering a plea of guilty to the charges before his plea was accepted, contrary to the assertion made as the basis of his motion." The court further found Curtis "failed to overcome the presumption that his counsel's conduct falls within the wide range of reasonable professional assistance." The court determined that May's testimony was credible, and, "[u]sing *Page 7 
simple contract considerations, the Defendant is not entitled to receive the benefit of the plea bargain for his failure of consideration to fulfill the contract in any way." The court concluded that Curtis' sentence was "not improper based upon no fulfillment, or even partial fulfillment of the contract."
 {¶ 17} Curtis asserts one assignment of error as follows:
 {¶ 18} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY DENYING THE MOTION TO VACATE THE GUILTY PLEA/POSTCONVICTION PETITION."
 {¶ 19} Curtis argues that his plea was involuntary because he did not understand the consequences thereof, resulting in a manifest injustice. Further, according to Curtis, the trial court "erred when it impliedly held he had violated the terms of a contract that Appellant could not perform due to the fact that he was in jail," and that his attorney "was ineffective for failing to raise this impossibility defense to the court." Curtis argues that the trial court did not give full and fair consideration to his request to withdraw his plea.
 {¶ 20} "Under Crim. R. 32.1, a defendant who files a post-sentence motion to withdraw [his] guilty plea bears the burden of establishing a `manifest injustice.' (Internal citation omitted). * * * A manifest injustice has been defined as `a clear or openly unjust act' that involves `extraordinary circumstances.' (Internal citation omitted). We apply an abuse-of-discretion standard to a trial court's decision on a motion to withdraw a guilty plea." Xenia v. Jones, Greene App. No. 07-CA-104, 2008-Ohio-4733, ¶ 6.
 {¶ 21} "A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was *Page 8 
afforded a full hearing, pursuant to Crim. R. 11, before he entered his plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." State v. Peterseim (1980), 68 Ohio App.2d 211,428 N.E.2d 863, syllabus.
 {¶ 22} "A change of heart because a defendant has learned what his expected sentence will be is not sufficient reason to grant a post-sentencing motion to withdraw a guilty plea." State v.Sylvester, Montgomery App. No. 22289, 2008-Ohio-2901.
 {¶ 23} "`A post conviction proceeding is not an appeal of a criminal conviction, but rather, a collateral civil attack on the judgment.'"State v. Gondor (2006), 112 Ohio St.3d 377, 860 N.E.2d 77,2006-Ohio-6679, ¶ 48. (Internal citation omitted). "In the interest of providing finality to judgments of conviction, courts construe the post-conviction relief allowed under R.C. 2953.21(A)(1) narrowly. (Internal citation omitted). Further, when a trial court rules on a petition for post-conviction relief after a hearing, an appellate court will give deference to the trial court's findings of fact." Id., ¶ 47. "[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence." Id., ¶ 58.
 {¶ 24} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong *Page 9 
presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). State v. Mitchell, Montgomery App. No. 21957, 2008-Ohio-493.
 {¶ 25} Having thoroughly reviewed the record, we conclude that Curtis, as noted by the trial court, was represented by highly competent counsel, that the trial court complied with Crim. R. 11 prior to accepting Curtis' plea, that Curtis received a complete hearing on his motion to withdraw his plea, and that the trial court fully considered his request to withdraw his plea. We further conclude, as the State asserts, that Curtis sought to change his plea, after he received the maximum sentence, merely due to a change of heart. The following exchange occurred at the hearing on Curtis' motion:
 {¶ 26} "Q. Mr. Curtis, if you had gotten four years and with the recommendation of judicial release after one year, that final deal that [counsel] offered you or that [counsel] said was on the table, would you have been satisfied with that?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. We wouldn't be here today. That's fair to say, isn't it?
 {¶ 29} "A. Definitely fair to say." *Page 10 
 {¶ 30} Giving deference to the trial court's findings of fact, we agree with the trial court that Curtis was fully informed, by both the court and his attorney, that the court could impose a maximum sentence of 16 years, and accordingly, Curtis' plea was not involuntary. We further agree that Curtis breached his contract with the Task Force, and for these reasons, his sentence is not improper.
 {¶ 31} Finally, Curtis' argument that his counsel was ineffective for failing to assert the affirmative defense of impossibility is wholly without merit. "`Impossibility of performance is an affirmative defense to a breach of contract claim. Impossibility of performance occurs where, after the contract is entered into, an unforseen event arises rendering impossible the performance of one of the contracting parties.'" Hiatt v. Giles, Darke App. No. 1662, 2005-Ohio-6536, ¶ 34. (Internal citation omitted). First, Curtis did not make this argument below, it is waived but for plain error, and we see no plain error. Further, the defense of impossibility has no application to Curtis' motion to vacate his plea and for postconviction relief. Also, Curtis failed to comply with the terms of the contract even before he was arrested; he hampered the detectives' efforts and failed to stay in contact with them. Even if the defense somehow applied, as the State asserts, Curtis' bond revocation and any resultant impossibility of performance was entirely forseeable when Curtis used marijuana, and Curtis' ability to perform was not subject to an "unforseen event." In other words, had counsel for Curtis asserted the affirmative defense of impossibility, the outcome of the hearing on Curtis' motion would not have been otherwise.
 {¶ 32} There being no manifest injustice and no abuse of discretion, Curtis' sole assignment of error is overruled.
Judgment affirmed.
WOLFF, P.J. and GRADY, J., concur.
Copies mailed to:
Elizabeth A. Ellis
Jon Paul Rion
 Hon. Stephen A. Wolaver *Page 1