[Cite as *Davis v. Meyers*, 2012-Ohio-1518.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SARAH B. DAVIS | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2011CA00103 |
| DON MEYERS | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Canton Municipal Court,
Case No. 2010 CVF 5225

JUDGMENT:    REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:    March 27, 2012

APPEARANCES:

For Appellant:

EDMOND J. MACK
MARIA C. KLUTINOTY
Tzangas, Plakas, Mannos & Raies, Ltd.
220 Market Ave. S.
8th Floor
Canton, OH 44702

For Appellee:

DANIEL J. FUNK
ERIC J. STECZ
Baker, Dublikar, Beck, Wiley &
Mathews
400 S. Main St.
North Canton, OH 44720

*Delaney, J.*

{¶1}   Plaintiff-Appellant Sarah B. Davis appeals the March 25, 2011 judgment entry of the Canton Municipal Court.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Defendant-Appellee Don Meyers owns a tract of land consisting of 3.84 acres in Osnaburg Township, Stark County, Ohio.  Meyers's tract is dissected by U.S. Route 30, with part located on the north side of the highway and part located on the south side of the highway.  Davis owns a parcel of land adjacent to the northern portion of Meyers's land.

{¶3}   In 2006, Davis's son approached Meyers to ask if he would sell the northern portion of his property to Davis.  On May 26, 2006, Davis and Meyers met at Meyers's home to enter into an agreement for Davis to purchase the northern portion of Meyers's property.  The parties utilized a pre-printed form entitled "General Agreement." The General Agreement lists Meyers as the first party and Davis as the second party. The General Agreement states, "[i]n consideration of the mutual promises and agreements herein stated and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows: 1. The First Party agrees that: * * *.  2.  The Second Party Agrees that: * * *."  Meyers and Davis did not complete this section of the agreement.

{¶4}   Section 3 of the General Agreement states, "[t]he parties mutually agree that the following additional terms will be applicable."  Meyers and Davis handwrote the following: "purchase price $3500; paid ck #3850 $500; balance $3000; on north side of Rt. 30 (only); seller agrees to pay $400.00 for surveying [sic] by Don Meyer; Aggreeed

[sic] by buyer – Sarah Davis." The General Agreement is signed by Davis and Meyers. Beneath the signatures of the parties, the parties wrote, "Buyer agrees to pay $410.00; Seller will pay $200.00 to process paperwork." That note is dated "1-4-06" and is signed by Meyers and Davis.

{¶5} Unbeknownst to Davis at the time she entered into the General Agreement, Meyers's property was secured by a mortgage from Wells Fargo.

{¶6} Shortly thereafter, the parties met with an attorney to assist them in closing on the property. The attorney told the parties she would only do a quitclaim deed to transfer the property. Meyers was aware that in order to sell the property, the mortgage on the property would have to be released. Meyers was willing to try to work and get the release. However, the parties did not complete the closing at that time.

{¶7} At the end of 2006, the parties met with another attorney to assist with closing. Davis alleged that Meyers stated he wanted to clear at least $2,000.00, requiring Davis to pay more in fees and costs. Davis objected to the change in terms and the closing did not occur at that time.

{¶8} While the parties were attempting to close, Davis incurred expenses to obtain a survey of the property and an appraisal of the property. She incurred expenses working county and township offices for the transfer of the property.

{¶9} In 2009, Davis retained an attorney to close on the property. The attorney learned there was a mortgage on the property and he made an application for release of the mortgage. The attorney, however, could not complete the transaction because Wells Fargo would not grant a partial release of the mortgage. Davis was not aware

that even if an application for partial release was made, Wells Fargo could decline to grant the partial release.

{¶10}  After the deal fell apart a third time, Davis stopped pursuing the real estate contract and instead filed suit for breach of contract against Meyers in the Canton Municipal Court requesting as damages the funds she spent in attempting to close on the property.

{¶11}  The trial court held a bench trial on the matter on March 24, 2011.  On March 25, 2011, the trial court issued its judgment entry finding the General Agreement did not comply with the Statute of Frauds.  Because the contract violated the Statute of Frauds, there was no binding agreement and therefore, no breach of contract.  The trial court further found if the contract was found to be enforceable, the denial of Wells Fargo to grant a partial release of the mortgage was a defense to Meyers's nonperformance of the contract.

{¶12}  It is from this decision Davis now appeals.

## ASSIGNMENTS OF ERROR

{¶13}  Davis raises three Assignments of Error:

{¶14}  "I. THE TRIAL COURT ERRED IN FINDING THAT A CONTRACT IS UNENFORCEABLE FOR FAILING TO STATE THE INTEREST TO BE CONVEYED.

{¶15}  "II. THE TRIAL COURT ERRED IN FINDING THAT THE CONTRACT WAS UNEFORCEABLE FOR FAILING TO SPECIFY WHAT DUTY THE SELLER HAD TO OBTAIN A PARTIAL RELEASE OF THE MORTGAGE.

{¶16}  "III. THE TRIAL COURT ERRED IN HOLDING THAT WHERE A PARTY'S NONPERFORMANCE OF THE CONTRACT IS ATTRIBUTABLE TO A THIRD

PARTY'S ACTIONS, IT IS A COMPLETE DEFENSE TO A BREACH OF CONTRACT CLAIM."

## ANALYSIS

### *Standard of Review*

{¶17} Before we address Davis's Assignments of Error, we recite the standard of review applicable to a breach of contract case.

{¶18} This matter was heard at a trial to the court. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Peterson v. Peterson*, 5th Dist. No. CT2003-0049, 2004-Ohio-4714, ¶ 10, citing *Cross Truck v. Jeffries*, 5th Dist. No. CA-5758, 1982 WL 2911(Feb. 10, 1982).

{¶19} It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Company*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. *Alexander v. Buckeye Pipe Line Company* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 628 N.E.2d 1377 (1994). Under a de novo review, an appellate court may interpret the

language of the contract substituting its interpretation for that of the trial court. *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (1993).

*I., II.*

{¶20} In this case, the trial court determined the General Agreement was not in compliance with the Statute of Frauds. The trial court first found in its March 25, 2011 judgment entry the General Agreement failed to designate the nature of the interest in the land to be conveyed. The trial court then found the General Agreement was silent as to Meyers's duty to obtain a partial release of the mortgage held by Wells Fargo. Davis argues in her first and second Assignments of Error the trial court erred in its application of the Statute of Frauds to the General Agreement.

{¶21} The Statute of Frauds is codified in Chapter 1335 of the Ohio Revised Code. Pursuant to R.C. 1335.05:

{¶22} No action shall be brought whereby to charge the defendant, * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

{¶23} Courts have struggled with the question of what writing is sufficient to satisfy the Statute of Frauds. In *Hunter v. Green*, 5th Dist. No. 09-CA-0010, 2010-Ohio-1460, ¶ 28, we stated: "A signed memorandum is sufficient to satisfy the Statute of Frauds so long as it (1) identifies the subject matter of the agreement; (2) establishes that a contract has been made; and (3) states the essential terms with reasonable certainty." *Id.* quoting *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-

4945, 797 N.E.2d 1002; *See also Doane v. Blood*, 5th Dist. No. CA-8579, 1991 WL 242080 (Oct. 21, 1991).

{¶24} The trial court first found in its judgment entry the General Agreement violated the Statute of Frauds because the agreement did not state the interest in the property to be conveyed to Davis, i.e., a lease, easement, life estate, or fee simple. Upon our de novo review, we find the Statute of Frauds requires identification of the property, but it is not necessary for compliance with the Statute of Frauds to identify in the real estate contract the nature of the interest to be conveyed.

{¶25} The Seventh District Court of Appeals in *McGee v. Tobin* reviewed the status of Ohio law as to the sufficiency of a description of property in a real estate contract necessary to comply with the Statute of Frauds:

> The Ohio Supreme Court has held that the Statute of Frauds does
> not require that real estate "be described with the particularity used in a
> deed or a formal contract. To so hold would render nugatory the provision
> of the statute that 'unless the agreement upon which such action is
> brought, *or some memorandum or note thereof*, is in writing, and signed
> by the party to be charged therewith.'" (Emphasis sic.) *Sanders v. McNutt*
> (1947), 147 Ohio St. 408, 410, 72 N.E.2d 72.  Rather, to comply with the
> statute of frauds, the memorandum "must definitely point out the particular
> land to be conveyed or must furnish the means of identifying it with
> certainty." *Schmidt v. Weston* (1948), 150 Ohio St. 293, 82 N.E.2d 284,
> paragraph three of the syllabus.

Courts have approved a variety of different ways in which parties have chosen to describe property subject to the statute of frauds. For instance, identifying the subject of the agreement as "property located at 4228 New Portage road" without describing the property in any other way satisfies the statute of frauds. Id. Likewise, identifying property as "the store at Beachwood Place Mall in Beachwood, Ohio known as Sweet Temptations" satisfies the statute of frauds. *N. Coast Cookies* at 349, 476 N.E.2d 388; see also *Mason v. Meyers*, 3rd Dist. No. 13-99-13, 1999-Ohio-0943 (Identifying property "as the Meyers Woods on TR 183 situated in Seneca County, Ohio," satisfies the statute of frauds); *Walkana v. Hanna* (Oct. 28, 1988), 7th Dist. No. 87 C.A. 174 (Identifying property as "10251 Calla Road, Green Township, Salem, Ohio," satisfies statute of frauds). As the Ohio Supreme Court said in *Schmidt*, these descriptions are sufficient because they can be applied and no other information need be supplied. Id. at 300, 82 N.E.2d 284.

*McGee v. Tobin*, 7th Dist. No. 04 MA 98, 2005-Ohio-2119, ¶ 19-20.

{¶26} In this case, the parties identified the property to be sold as "on north side of Rt. 30 (only)." (General Agreement, Plaintiff's Exhibit 5.) The trial court found no error in this description, nor do the parties argue this description was faulty. As such, we find the identification of the property complies with the Statute of Frauds.

{¶27} Meyers agrees the Statute of Frauds does not require every element to be included in the real estate contract. Meyers does not cite to any case law to support the trial court's legal conclusion regarding the identification of the nature of the interest in

the property to be conveyed, in addition to the identification of the property. Meyers instead argues the failure to include the nature of the conveyance is not demonstrative of a violation of the Statute of Frauds, but rather shows there was a defective contract between Davis and Meyers. Meyers states without an expression of the nature of the interest of the property to be conveyed to Davis, there was no meeting of the minds when the parties entered into the General Agreement. "In order to declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." *Sigler v. State*, 5th Dist. No. 08-CA-79, 2009-Ohio-2010, ¶ 82, citing *Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶28} Meyers's argument fails as a matter of law. In *McCarty v. Lingham*, 111 Ohio St. 551, 146 N.E. 64 (1924), the Supreme Court of Ohio held, "where a sale of real estate is made in general terms, without any stipulation as to the character of title which the purchaser is to get, he is entitled to demand that a marketable title shall be given." The Court then described what was a marketable title:

> As to what constitutes a marketable title no hard and fast rule can be declared to govern every state of facts which might be presented in the numerous controversies which are likely to arise where such a title is implied in a sale contract drawn in general terms, and each case is therefore *sui generis*. Some attorneys are more technical than others in advising their clients upon the defects of greater or less importance to be found in an abstract of title, and some purchasers are more timid than

others, and the court can therefore do nothing more than establish a very general rule. As a result of the numerous expressions of the courts on this subject, it may be conservatively stated that a marketable title is one which imports such ownership as insures to the owner the peaceable enjoyment and control of the land, as against all others. It has also been defined as one which is sufficient to support or defend an action of ejectment. It should show a full and perfect right of possession in the vendor. It should appear reasonably certain that the title will not be called in question in the future, so as to subject the purchaser to the hazard of litigation with reference thereto. It must in any event embrace the entire estate or interest sold, and that free from the lien of all burdens, charges, or incumbrances which present doubtful questions of law or fact.

*Id.*

{¶29} While in reference to deeds, R.C. 5302.04 lends support to the description of a marketable title. The statute elucidates the inclusive language used in land conveyances:

In a conveyance of real estate or any interest therein, all rights, easements, privileges, and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary is stated in the deed, and it is unnecessary to enumerate or mention them either generally or specifically.

R.C. 5302.04.

{¶30} We find then Meyers's argument there was no enforceable contract due to the failure to include the nature of the interest in the property to be conveyed is not supported by law. The facts of the case also support the conclusion the contract does not fail on this basis. There are no facts in evidence that Meyers did not intend to sell Davis his property in fee simple.

{¶31} In order for a real estate contract to comply with the Statute of Frauds, it is necessary the signed memorandum identify the subject matter, establish a contract has been made, and state the essential terms with reasonable certainty. The Statute of Frauds does not require that real estate "be described with the particularity used in a deed or a formal contract," which would include the nature of the interest in the property to be conveyed.

{¶32} Davis's first Assignment of Error is sustained.

{¶33} The trial court next determined the General Agreement violated the Statute of Frauds because the agreement was silent as to Meyers's duty to remove any encumbrances to the property, specifically, a partial release of the Wells Fargo mortgage. Agreements to discharge or release a mortgage is within the Statute of Frauds and must be in writing because a mortgage is an interest in the land. *Douglas Co. v. Gatts*, 8 Ohio App.3d 186 (11th Dist.1982). However, the facts in the case sub judice create a different result as that in *Douglas Co. v. Gatts*.

{¶34} In *Douglas Co. v. Gatts*, Gatts sold a parcel of land to the Ravenna Plaza Associates. The balance due on the property was evidenced by a note and secured by a mortgage held by Gatts. Ravenna Plaza Associates sold the property to the Douglas Company. Before the sale, Gatts as mortgagee allegedly made an oral agreement with

the Douglas Company to discharge the mortgage for $100,000 from the Douglas Company. The Douglas Company stated it tendered the money and Gatts refused to discharge the mortgage. The Eleventh District Court of Appeals held an oral agreement to release or discharge a mortgage, which is an interest in the land, is within the Statute of Frauds. *Id.*

{¶35} The facts in this case can be differentiated from those in *Douglas Co. v. Gatts.* In the present case, Wells Fargo holds the mortgage on the property in question and only Wells Fargo has the authority to release the mortgage. Meyers testified he knew he had a duty to apply for a partial release of his mortgage from Wells Fargo. If Wells Fargo agreed to release the mortgage on Meyers's property, the agreement to release the mortgage must be in writing pursuant to the Statute of Frauds. As opposed to *Douglas Co. v. Gatts*, there was no agreement between Davis and Wells Fargo to release the mortgage on the property.

{¶36} As stated above, in order to satisfy the Statute of Frauds, the writing must identify the subject matter, establish that a contract has been made, and state the essential terms of the agreement. Davis's second Assignment of Error raises the issue of the essential terms of the agreement. Is the duty to apply for a release of a mortgage an essential term of the agreement so that it complies with the Statute of Frauds? In *McGee v. Tobin*, the court answered it was not:

> Because the statute of frauds only requires that the memorandum contain the essential terms of the agreement, it need not contain all the terms of the agreement. *N. Coast Cookies* at 349, 476 N.E.2d 388. This is similar to the more general rule that parties cannot enter into an

enforceable contract unless they come to a meeting of the minds on the essential terms of the contract. See *Alligood v. Procter & Gamble Co.* (1991), 72 Ohio App.3d 309, 311, 594 N.E.2d 668. In those cases, courts have identified the essential terms of a contract as "the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." Id. This does not change in the statute of frauds context. Accordingly, a contract does not violate the statute of frauds merely because the writing does not state a specific date for performance. *N. Coast Cookies* at 349, 476 N.E.2d 388; *Schafer v. Faylor* (1944), 74 Ohio App. 533, 539, 60 N.E.2d 339. "A contrary rule would require every written contract for the sale of realty interests to contain the date for transfer of possession. Common experience rejects such a rule." Id. Likewise, a written contract for a sale of land need not include the character of the deed to be executed, specify who should pay taxes on the sale, or state whether a mortgage must be given to secure the purchase money in order for the contract to comply with the statute of frauds. *Schafer* at 540, 60 N.E.2d 339.

*McGee v. Tobin*, at ¶ 24.

{¶37} Further, it has been held that "[a] title need not be free if any possible claim of defect in order to be marketable, but it must be in a condition as would satisfy a buyer of ordinary prudence." *G/GM Real Estate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc.*, 61 Ohio St.3d 375, 575 N.E.2d 141 (1991), paragraph two of syllabus.

{¶38} Meyers's argument there was no meeting of the minds as to the duty to apply for a release of the mortgage is disingenuous. While Davis did not know at the time of entering into the agreement there was a mortgage on the property, Meyers testified at the bench trial that he knew he had a duty to apply for a release of the mortgage. (T. 11.) Davis learned of the mortgage when she worked with her third attorney to close on the property and they worked to apply for a release of the mortgage without success.

{¶39} Davis's second Assignment of Error is sustained.

*III.*

{¶40} In her third Assignment of Error, Davis argues the trial court erred in finding even if the General Agreement was enforceable under the Statute of Frauds, Meyers has a complete defense to the breach of contract because Wells Fargo refused to partially release the mortgage. Meyers argues this Court need not reach this issue because Davis's previous Assignments of Error should be overruled. As we have sustained the first and second Assignments of Error, we find this issue to be ripe for our review.

{¶41} It was found Meyers had a defense to a breach of contract because "[n]onperformance of a condition is excused where performance thereof is prevented by the other party." *Dynes Corp. v. Seikel, Koly & Co., Inc.* 100 Ohio App.3d 620 (8th Dist.1994). In this case, there is no allegation or evidence Davis prevented Meyers from obtaining a partial release of the mortgage from Wells Fargo.[1]

---

[1] There is an affirmative defense to a breach of contract entitled "impossibility of performance." Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties. *State v. Curtis*, 2nd Dist. No.2008CA22, 2008-Ohio-5643.

{¶42}  We sustain Davis's third Assignment of Error based on the facts presented in this case.

{¶43}  Davis goes on to argue because of the general obligation to convey a marketable title, Meyers had an obligation to obtain a release of the mortgage from the property and is therefore in breach of contract.  We decline to reach this issue and remand the matter to the trial court for its determination whether there was a breach of contract.

## CONCLUSION

{¶44}  We sustain Davis's first, second, and third Assignments of Error.  We therefore remand the matter to the trial court to determine whether there was a breach of contract and if so, would damages be warranted.

{¶45}  The judgment of the Canton Municipal Court is overruled and the March 25, 2011 judgment is reversed and remanded for further proceedings consistent with this opinion.

By: Delaney, J.
Gwin, P.J. and
Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER

PAD:kgb

[Cite as *Davis v. Meyers*, 2012-Ohio-1518.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SARAH B. DAVIS | : | |
| | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DON MEYERS | : | |
| | : | |
| | : | Case No. 2011CA00103 |
| Defendant-Appellee | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Canton Municipal Court is reversed and remanded for further proceedings consistent with this opinion and judgment. Costs assessed to Appellee.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER