[Cite as *O'Brien v. Shorey*, 2021-Ohio-2519.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ROBERT G. O'BRIEN, | : | |
| Plaintiff-Appellee, | : | No. 110000 |
| v. | : | |
| JAMES SHOREY, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 22, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-875565

### *Appearances:*

Mansour Gavin, L.P.A., Anthony J. Coyne, John W. Monroe, and Tracey S. McGurk, *for appellee.*

Law Offices of Brent L. English and Brent L. English, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant James Shorey ("Shorey") appeals the trial court's decision to grant plaintiff-appellee Robert O'Brien's ("O'Brien") motion for

partial summary judgment and attorney fees.  We affirm the trial court's decision to grant partial summary judgment and award attorney fees.

## I.    Facts and Procedural History

{¶ 2}    On November 8, 2016, Shorey and O'Brien entered into a real estate purchase agreement for an undeveloped plot of land ("the property").  The purchase price for the property, located next door to Shorey's residence, was $145,000.  A provision of the purchase agreement included that Shorey was to provide O'Brien with a good and marketable title by the closing date on January 26, 2017.  The purchase agreement also stated that if there was a defect in the title, Shorey had 30 days to remedy it.  If it could not be remedied, then O'Brien could either accept a deed with the defect without a reduction in the purchase price or terminate the agreement without further liability to any party. On January 26, 2017, O'Brien transferred payment in the amount of $134,535 to the title company.  The earnest money, the difference between the price of the property and the amount transferred by O'Brien, had been paid to the realty company on November 11, 2016.

{¶ 3}    On January 27, 2017, Shorey failed to deliver the title of the property to O'Brien.  As a result, the earnest money was returned to O'Brien, and O'Brien filed a lawsuit against Shorey on February 7, 2017.  O'Brien's lawsuit alleged breach of contract, breach of the implied duty of good faith and fair dealing, negligent misrepresentation, and promissory estoppel relating to a real estate purchase agreement.

{¶ 4} Shorey claimed that he could not deliver the title to the property because the property was tied to his divorce proceeding with his ex-wife, Amy Guy ("Guy"). According to Shorey, he and Guy were both responsible for the mortgages on their personal residence and the property. Shorey claims that when he entered into the purchase agreement with O'Brien, he tried to secure the release of the mortgages on the property. However, Shorey contends that because Guy was on the mortgages, she needed to sign a release for the properties for both mortgages. According to Shorey, Guy refused to sign the release because she believed that a separate sale of the property would impair the sale of the marital residence.

{¶ 5} O'Brien, however, contested Shorey's claims because Guy's interest in the property had already been transferred to Shorey when their divorce was finalized. Shorey and Guy's divorce was finalized in May 2016, and according to the record, Guy's interest, by way of a quitclaim deed, was transferred to Shorey on September 9, 2016. Additionally, pursuant to the divorce agreement, the proceeds from the sale of the property are to be applied to Guy's mortgage liability that remained.

{¶ 6} On June 15, 2018, O'Brien filed a motion for partial summary judgment against Shorey arguing that O'Brien was entitled to specific performance and damages as a result of Shorey's breach of the contract. Shorey filed an opposition brief. The trial court granted O'Brien's motion for partial summary

judgment as to the breach of contract, but denied O'Brien's motion seeking specific performance. In its journal entry, the trial court stated, in part:

> The court finds that defendant James Shorey breached the terms of the purchase agreement. Plaintiff's motion for partial summary judgment is granted and denied in part. The court denies plaintiff's motion for specific performance of the purchase contract. The court grants plaintiff's motion for a damages hearing. A hearing shall be set by separate order to determine the amount of plaintiff's damages resulting from defendant James Shorey's breach.

Journal entry No. 105282691 (Aug. 8, 2018).

{¶ 7} O'Brien filed a brief in support of his claim for damages against Shorey, and Shorey filed an opposition brief. O'Brien and Shorey agreed that the issue of damages would be heard on the briefs submitted. On December 27, 2018, the trial court found that O'Brien has sustained damages of $6,278.32 consisting of lost interest on his escrow deposit.

{¶ 8} Shorey filed an appeal with this court, and on March 6, 2019, this court sua sponte dismissed Shorey's notice of appeal for lack of a final appealable order.[1] During this time, the original trial judge retired and was replaced by a newly elected judge. Thereafter, the trial court ordered O'Brien to submit his record of attorney fees. On March 16, 2020, the trial court's journal entry states, in part:

> The court informed plaintiff's counsel that, while [the trial court] had awarded damages, [it] had not ruled on an award of attorney fees for plaintiff. The docket shows that the parties had agreed that the issue of attorney fees would be decided on the brief alone.

---

[1] *O'Brien v. Shorey*, 8th Dist. Cuyahoga No. 108170.

Journal entry No. 112925309 (Mar. 16, 2020).

{¶ 9} On September 3, 2020, the trial court granted O'Brien's request for attorney fees and awarded him $26,045.15 and found that Shorey acted in bad faith by entering into the purchase contract when Shorey knew that he was unable to convey clear title to O'Brien.

{¶ 10} Shorey filed this appeal assigning four errors for our review:

I. The trial court erred in granting a motion for partial summary judgment finding appellant liable for breaching a contract for the sale of real estate where conditions rendered it impossible for him to perform under the contract;

II. The trial court improperly granted partial summary judgment for the buyer of real estate where a genuine issue of fact in dispute exists regarding whether he tendered the agreed consideration for the property;

III. The trial court improperly awarded attorney's fees for appellants alleged a breach of contract where no evidence of bad faith was demonstrated; and,

IV. The trial court erred by not conducting an evidentiary hearing on Appellee's request for attorney's fees where there were significant disputes about the validity of those fees.

## II. Summary Judgment

### A. Standard of Review

{¶ 11} "We review summary judgment rulings de novo, applying the same standard as the trial court." *Montgomery v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 18, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "We accord no deference

to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Id.*

{¶ 12} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. Civ.R. 56. "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E)." *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, 74 N.E.3d 739, ¶ 10 (8th Dist.).

### B.    Law and Analysis

{¶ 13} In Shorey's first assignment of error, he argues that it was impossible for him to convey good and marketable title, and thus he did not breach the contract with O'Brien. "The essential elements of a cause of action for breach of contract are: the existence of a contract; performance by the plaintiff; breach by the defendant; and resulting damage to the plaintiff." *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 8th Dist. Cuyahoga No. 86442, 2006-Ohio-1353, ¶ 22, citing *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10, 2002-Ohio-443, 771 N.E.2d 874 (2d Dist.).

{¶ 14} Shorey contends that Guy refused to cooperate in releasing the two mortgages from the property that kept him from transferring the title to O'Brien.

"'Impossibility of performance is an affirmative defense to a breach of contract claim. Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties.'" *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 8th Dist. Cuyahoga No. 94361, 2010-Ohio-5597, ¶ 13, quoting *Skilton v. Perry Local School Dist. Bd. of Edn.*, 11th Dist. Lake No. 2001-L-140, 2002-Ohio-6702, ¶ 26.

{¶ 15} Shorey's contentions are not well-taken. According to Shorey's separation agreement and divorce decree, Shorey and Guy agreed that Shorey would retain the house and the property free and clear of any claim by Guy, provided he obtained refinancing within 120 days and remove her name from any mortgage liability. *See Guy v. Shorey*, 8th Dist. Cuyahoga No. 106923, 2019-Ohio-977, ¶ 1. "As required by the terms of the separation agreement, Amy filed a quitclaim deed and renounced her interest in the property." *Id.* at ¶ 5. At one of the divorce hearings, Shorey "admitted that he did not actually file an application for refinancing because he claimed that prospective lenders told him that he had to have full-time employment (at the time, he was starting a company) as a condition of acceptance." *Id.* at ¶ 1. Shorey was found in contempt for disobeying a court order, and this court affirmed the trial court's decision. *Id.* at ¶ 17.

{¶ 16} Shorey has not provided any evidence that he was unable to convey a marketable title to O'Brien. "A marketable record title 'operates to extinguish' all

interests existing prior to the root of title." *West v. Bode*, 2019-Ohio-4092, 145 N.E.3d 1190, ¶ 22 (7th Dist.), citing R.C. 5301.47(A). "Pursuant to R.C. 5301.50: subject to R.C. 5301.49, the record marketable title shall be held free and clear of all interests which depend upon events occurring prior to the effective date of the root of title. R.C. 5301.50." *Id.* "All such interests * * * are hereby declared to be null and void." *Id.* The record demonstrates that Guy relinquished her interest in the property, and Shorey was ordered to obtain refinancing within 120 days or sell the property to remove Guy from the mortgage. Guy no longer had any interest in the property.

{¶ 17} Shorey contends that because there were two mortgages on the residence as well as the property, he could not convey marketable title because Guy would not agree to release the property from one of the mortgages. However, "'[a] title need not be free [of] any possible claim of defect in order to be marketable, but it must be in a condition as would satisfy a buyer of ordinary prudence.'" *Davis v. Meyers*, 5th Dist. Stark No. 2011CA00103, 2012-Ohio-1518, ¶ 37, quoting *G/GM Real Estate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc.*, 61 Ohio St.3d 375, 575 N.E.2d 141 (1991), paragraph two of syllabus. Shorey does not demonstrate that he did not have a marketable title, as he claims. Nor does the record demonstrate that he informed O'Brien, before January 27, 2017, that he was unable to provide a marketable title.

{¶ 18} Additionally, if Shorey's argument that he could not convey marketable title to O'Brien is correct, it is not an unforeseen event that arose after the parties entered into a contract, rendering impossible the performance of one of the contracting parties. Shorey knew or should have known that he could not convey marketable title before he entered into the agreement with O'Brien.

{¶ 19} Therefore, Shorey's first assignment of error is overruled.

{¶ 20} In Shorey's second assignment of error, he argues that O'Brien did not deposit the full purchase price of the property. According to Shorey, O'Brien agreed to a purchase price of $145,000 for the property. O'Brien paid $10,000 of earnest money, and then $134,535,58 at the time of purchase, resulting in a $464.42 deficit of the full purchase price. Shorey argues that O'Brien's $464.42 deficit is a genuine issue of fact that is in dispute, and therefore the trial court erred in granting partial summary judgment.

{¶ 21} Shorey is confusing the principle of a genuine issue of material fact and substantial performance.

> A genuine issue of material fact is a bona fide argument between conflicting interpretations of the evidence related to a contested fact that could be found for either party based on the evidence available. The conflict must arise from evidence in the record, and it must relate to a fact that is material to one or more theories of the case. In other words, a genuine issue of material fact would suggest that from the available record, the court could reasonably make different findings related to a fact, which could alter the validity of a party's claim or defense, depending on which finding is made.

*The Wolters Kluwer Bouvier Law Dictionary Desk Edition, Genuine Issue of Fact*, Copyright 2021.

{¶ 22} Shorey never claimed that O'Brien breached their contract. He argued that it was impossible for him to fulfill his contractual responsibility pertaining to the property. Additionally, O'Brien substantially performed under the agreement of the contract. "In Ohio, a 'long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract.'" *Davis v. J&J Concrete*, 11th Dist. Trumbull No. 2018-T-0074, 2019-Ohio-1407, ¶ 20, quoting *Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, 11th Dist. Trumbull No. 2010-T-0004, 2010-Ohio-5395, ¶ 18. (Internal citations omitted).

{¶ 23} O'Brien tendered almost $135,000 to Shorey, leaving a deficit of $464.42. Such a little amount is nominal and not sufficient to breach the contract. However, Shorey's actions were a substantial breach. "Individuals cannot maintain a breach of contract action when they themselves failed to substantially perform under the contract terms." *Bank of Am. v. Berman*, 8th Dist. Cuyahoga No. 101049, 2014-Ohio-3331, ¶ 17, citing *Mtge. Elec. Registration Sys. v. Mosley*, 8th Dist. Cuyahoga No. 93170, 2010-Ohio-2886, ¶ 47. We find that Shorey's argument fails.

{¶ 24} Shorey's second assignment of error is overruled.

### III. Attorney Fees

## A. Standard of Review

{¶ 25} "We review the trial court's decision to award attorney fees for a clear abuse of discretion." *Bain v. Levinstein*, 8th Dist. Cuyahoga No. 94313, 2010-Ohio-5596, ¶ 15, citing *Szymczak v. Szymczak*, 136 Ohio App.3d 706, 737 N.E.2d 980 (8th Dist.2000). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## B. Law and Analysis

{¶ 26} In Shorey's third assignment of error, he argues that the trial court erred in awarding attorney fees to O'Brien based on the trial court's determination that Shorey acted in bad faith.

> Ohio follows the "American Rule," which provides that a prevailing party in a civil action may not generally recover its attorney fees as part of the "costs of litigation" unless attorney fees are provided for by statute, the nonprevailing party acts in bad faith, or there is an enforceable contract that "specifically provides for the losing party to pay the prevailing party's attorney fees."

*Kennedy v. Stadtlander*, 8th Dist. Cuyahoga No. 109880, 2021-Ohio-1954, ¶ 18, citing *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.

{¶ 27} Shorey contends that he did not act in bad faith. Bad faith is not just bad judgment, "[i]t is conduct amounting to 'dishonest purpose,' 'moral obliquity,' 'a breach of a known duty through some motive of interest or ill will,' or 'partakes of the nature of fraud * * * with an actual intent to mislead or deceive another.'" *In re*

*Estate of Abraitis*, 8th Dist. Cuyahoga No. 104816, 2017-Ohio-5577, ¶ 14, quoting *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8.

{¶ 28} The trial court, in its memorandum of opinion and order, stated, in part: "Based upon the evidence before it, the Court now further finds that there existed no impediment to Defendant's ability to convey clear title to Plaintiff at closing. Therefore, it is clear that Defendant entered into the purchase agreement with Plaintiff in bad faith." Journal entry No. 114414880 (Sept. 10, 2020).

{¶ 29} Shorey argues that Guy refused to cooperate in removing the mortgages from the list and that the house was also for sale but no buyer had come forward. However, Shorey knew before he entered into an agreement with O'Brien that the trial court in his divorce proceedings had ordered him to refinance both the house and the property within 120 days. If Shorey failed to obtain refinancing during that time frame, "the property would be immediately listed for sale by a realtor of [Guy's] choosing and 'sold post-haste at a mutually agreeable price as recommended by the realtor.'" *Shorey*, 8th Dist. Cuyahoga No. 106923, 2019-Ohio-977, at ¶ 1.

{¶ 30} Additionally, "[Shorey's] realtor testified that the sale price of the house should be lowered, but [Shorey] refused to lower the price. Notably, [Shorey] testified and candidly acknowledged his desire to keep the house." *Id.* at ¶ 9. Shorey has not demonstrated that he could not convey clear title to the property. Even if

Shorey's argument is well-taken that he could not convey title to O'Brien, he knew or should have known that before he entered into a purchase agreement with O'Brien.

{¶ 31} Therefore, Shorey's third assignment of error is overruled.

{¶ 32} In Shorey's fourth and final assignment of error, he argues that the trial court should have conducted a hearing on the issue of attorney fees. In its decision, the trial court stated, in part: "The Court notes that prior to the hearing going forward, the parties agreed that the issue of damages would be held on briefs only, and that no additional testimony would be taken." Journal entry No. 114414880 (Sept. 10, 2020).

{¶ 33} The trial court also noted that:

> Pursuant to the Rule of Superintendence 71(C), attorney fees may be allowed if there is a written application that sets forth the amount requested, and will be awarded only after proper hearing, unless otherwise modified by local rule. Local Rule 11.0(A) states that motions shall be submitted and determined upon the motion papers only; oral arguments may be permitted on application and proper showing.

*Id.*

{¶ 34} On March 16, 2020, the parties had a telephone conference. However, neither Shorey nor his counsel appeared. The journal entry states, in part:

> Telephone conference held 03/16/2020. Counsel for plaintiff present. Counsel for defendant failed to appear. The court informed plaintiff's counsel that, while [the trial court] had awarded damages, [it] had not ruled on an award of attorney fees for plaintiff. The docket shows that the parties had agreed that the issue of attorney fees would

be decided on the briefs alone. The court grants the parties time to update their briefing.

Journal entry No. 112925309 (Mar. 16, 2020).

{¶ 35} Sup.R. 71(C) requires that a trial court hold a hearing before awarding attorney fees unless a local rule provides otherwise. *See In re Adoption of Bruner*, 7th Dist. Mahoning No. 05 MA 68, 2006-Ohio-497, ¶ 3. Loc.R. 11.0(A) allows for motions to be determined just on the motion papers, without a hearing. We find Shorey's contention is without merit.

{¶ 36} Shorey's fourth assignment of error is overruled.

{¶ 37} We must note that during oral arguments O'Brien's counsel requested that we either grant attorney fees to O'Brien for the appellate case or remand to the trial court to conduct a hearing. We decline to do so.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EMANUELLA D. GROVES, J., CONCUR